(No. 18647.—

Lizzie Landretto, Defendant in Error, *vs.* The First Trust and Savings Bank of Chicago, Plaintiff in Error.

*Opinion filed December 20, 1928—Rehearing denied Feb. 7, 1929.*

Farmer, J., dissenting.

MARSHALL & MARSHALL, for plaintiff in error.

CONNELLY, WELD, WALKER, SEARLE & CRAMPTON, (H. A. WELD, of counsel,) for defendant in error.

Mr. COMMISSIONER CROW reported this opinion:

Complainant, Lizzie Landretto, defendant in error here, filed a bill in the circuit court of Rock Island county in January, 1921, seeking a divorce from her husband, Sam Landretto, on the ground of extreme and repeated cruelty. He filed an answer denying the allegations of the bill and filed a cross-bill charging complainant with adultery. By her amended answer to the cross-bill she admitted that she had committed adultery and practiced prostitution, but averred it was with the knowledge and consent of her husband and that he caused her to engage in such practices. Certain banks located in Rock Island and Chicago were made parties defendant because of the possession by them of bonds or money alleged to be the property of complainant and to which her husband claimed title. Upon trial by jury verdicts were rendered on the original and cross-bills in favor of complainant, and a decree of divorce was entered. The cause was referred to a master in chancery to take and report the evidence, and his conclusions thereon, as to the ownership of certain bonds and as to a controversy concerning $2500, originally on joint deposit in the First Trust and Savings Bank of Chicago. The master reported concerning the controversy between complainant and the bank, finding that the $2500 on deposit in the bank in the name of Landretto had been withdrawn by him on

January 4 and January 8, 1921, previous to the service of summons upon the bank; that all the money deposited was obtained by complainant and her husband in open violation of law, by the operation of houses of prostitution and through her practices as a common prostitute; that courts of equity do not adjust differences or supervise accountings between wrongdoers, and the bank therefore should not be compelled to account to complainant for the money it paid out to the husband. Objections to the report of the master were overruled and stood as exceptions before the chancellor. The chancellor sustained the exceptions to the master's report and entered a decree finding that all the deposits made in the bank were complainant's money; that the bank was so notified when the account was opened and the first savings deposit was made, and again at a later date; that the bank knew of the contemplated divorce action by complainant, and by its officer promised and agreed with her and her attorney to withhold the money and not permit it to be withdrawn by Landretto for a period of thirty days succeeding December 29, 1920; that the bank violated its promise to hold the money and paid to the husband the entire sum, except one dollar, on deposit in his name. A decree was entered that the First Trust and Savings Bank pay forthwith to complainant the sum of $2500. From that decree it prosecuted an appeal to the Appellate Court for the Second District, which affirmed the decree. This court granted a writ of *certiorari* to review the judgment of the Appellate Court.

The material facts developed upon the hearing are, substantially: During June, 1914, Sam Landretto took complainant, who was then about sixteen years of age, from her home in Chicago to Rock Island, placed her in a house of prostitution, and by threats, force and inhuman treatment compelled her to live a life of shame and to give her earnings therefrom to him. She was an inmate of two or three places and was later married to him to escape prose-

cution after one of the places had been raided. After their marriage the criminal practices were continued by both parties. He operated a "jitney bus" for a while, and later they established and operated two or three different houses of prostitution, usually having some other business in the same building. The last place was operated about three years, the earnings of complainant and two girls employed in the place amounting to about $600 per month. She testified that Landretto always demanded and compelled the delivery to him of the money made from the place, but the records of the American Trust and Savings Bank of Rock Island show that there was deposited in her name in that bank more than $4300. He obtained the women for the house and paid the rent and expenses out of the earnings. The place was known as that of complainant, and in such capacity she was once arrested and fined. She testified that Landretto had nothing and made no money over expenses and that all the money saved by them was from prostitution. The money was deposited by him under different names, some of which were fictitious, in Rock Island banks, his purpose being to prevent the public authorities from knowing about his having the money.

From the money derived from prostitution a savings account was opened in the First Trust and Savings Bank of Chicago. The original account, No. 340,743, was arranged and a deposit of $2000 made by complainant and her husband on January 12, 1920. The account was in the name of "Lizzie or Sam Landretto," and any or all of the account was payable to either, subject to the by-laws of the bank, one of which was, in substance, that the bank reserved the right to demand and receive sixty days' notice in writing as a condition of the withdrawal of all sums of $100 or more and thirty days' written notice for the withdrawal of a lesser sum. The pass-book or deposit book was required to be presented when withdrawal notice was given. Complainant testified that the bank officer was told,

at the time of making the initial deposit, that the money was her property. Additional deposits were made during the following months of May and June, and an interest item was added in July, making the total account $5535. All of the deposits were money accumulated from prostitution and were the proceeds of the houses of prostitution conducted by complainant, as appears from her testimony. On or about August 18, 1920, complainant left her husband. She told him she was going to Chicago to see a doctor. She called at the plaintiff in error bank about that date, with the pass-book, for the purpose of drawing out the savings account. The bank official to whom she applied for the money at first refused to pay her any of the money without her husband's signature or unless he was present. However, the bank did pay her $2000 and took her receipt therefor. She testified that she told the bank teller the money deposited belonged to her. The pass-book was sent by messenger to complainant's brother, who lived in Chicago, and complainant went to Detroit. Some time later she moved to St. Louis, where she was staying at the time of the hearing of this cause. About August 20 her husband went to the bank and withdrew the balance of the money, $3535. He retained $500 and re-deposited $3035 in his own name at the same bank in a new savings account, No. 359,505. The signature card required of him by the bank in arranging the new savings account bears the notation, "via 340,743," which was the number of Lizzie and Sam Landretto's joint savings account. During October he withdrew $535 from the bank, leaving $2500 on deposit in the account.

About December 29, the exact time being in dispute, complainant and her St. Louis attorney went to the Chicago bank and made inquiry about the Landretto savings account. After some investigation on the part of one of the bank's officials, complainant and her attorney were informed that the joint account of the Landrettos had been

closed by the husband withdrawing all the money in August, and that he had opened a new account in his own name on the same day and had since made withdrawals until the balance at that time was $2500. The testimony of complainant and her attorney is, in substance, that the bank was again informed that the money in its possession belonged to complainant and the bank had merely transferred her funds from the old joint savings account to the husband's new individual savings account, and she demanded that no part of it be paid to the husband,—at least until after the contemplated divorce proceedings were commenced, which they explained to the bank official were to be instituted immediately in Rock Island county, and that she would attempt to get possession of the funds then in the bank. The bank official testified that the interview was about the middle of December, and denied that he promised the bank would hold the money for any definite time; that he said the money would be held for a day or two, so that complainant could have a written order served upon the bank, and that a stop order was placed against the account for several days. Following this conversation complainant and her St. Louis attorney went to Rock Island, where local counsel was consulted and arrangements made for the divorce proceeding to be instituted. The bill was prepared in Rock Island on December 30 or 31 but was not filed until January 4. It prayed that an injunction be issued against the husband, and also against two Rock Island banks named and plaintiff in error, to prevent the disposal of any property or money claimed by the husband. The summons and injunction were served upon him January 7, 1921. Plaintiff in error was served with summons on January 8 but no injunction or restraining order was served. On January 4, 1921, Landretto drew $500 and on the morning of January 8, 1921, before service of summons upon the bank, he drew the further sum of $2000, leaving a balance in the account of one dollar. The pass-book issued

to the Landrettos when the deposit was made contained the following agreement and memoranda:

"Lizzie or Sam Landretto................: 340743.

"The undersigned hereby agree to the by-laws, rules and regulations governing the savings department of First Trust and Savings Bank, Chicago, and further agree that all deposits in this account, or any part thereof, or any interest or dividend thereon, may be paid to any one of the undersigned, whether the other or others be living or not, on the receipt or acquittance of any of the undersigned.

"Sign here: 1. Mrs. Lizzie Landretto. 2. Sam Landretto. Jan. 12, 1920. Jointly and severally. Address: 300 21st St., Rock Island, Ill."

The question for decision presented by the record in this case is, What is the legal effect of the agreement between the First Trust and Savings Bank on the one part and Lizzie and Sam Landretto on the other, evidencing the deposit of money in the bank? It is contended on behalf of defendant in error that the money having been deposited by them to their joint account, she having drawn $2000 of it and Landretto the remainder and deposited it to his individual account, plaintiff in error is legally bound to refund it to her. In other words, it owes her that much money and interest, although Landretto withdrew it from the joint account by virtue of a contract with the bank, to which she was a party, authorizing it to be drawn. The decree of the circuit court was that the First Trust and Savings Bank pay forthwith to Lizzie Landretto the amount of money held by it on December 29, 1920, to-wit, the sum of $2500. The question has been argued as matter of law.

Joint bank accounts are not uncommon. The question here presented is uncommon so far as precedents disclose. The right to draw and the duty to pay checks against the account rest upon contract. It does not depend upon the ownership of the fund. No case like it has been cited and none has been found. It is elementary doctrine, often repeated, that the agreement of parties is the law govern-

ing their rights unless contrary to some rule of positive law or principle of public policy. When the Landrettos deposited the money they signed the agreement, without which the deposit would not have been accepted. They are bound by it as between themselves and between them and the bank. The only condition annexed was that the one to whom it was paid should give to the bank a receipt or acquittance for the sum paid. For the $2000 which Lizzie Landretto drew the receipt read: "Received of the First Trust and Savings Bank two thousand dollars, which amount charge to my account," giving the pass-book number. Landretto signed the same sort of receipt when he withdrew the remainder, closing the joint account. She could thereafter draw no money from it, because all had been drawn according to their contract. The contract was thereby terminated.

Plaintiff in error was not derelict in any duty it owed to defendant in error when it permitted Landretto to withdraw the remainder of the money from the joint account. The contract placed no restriction on the amount either might draw or the disposition or use of it. After the remainder of the joint deposit was drawn by Landretto he deposited it in the bank to his personal account. The ownership of the money deposited was not involved in either deposit. The bank was indebted to the depositors to the amount of the deposit until withdrawn. It had been requested by defendant in error to hold the money against the last deposit until suit for divorce was filed, and her counsel promised to begin suit at once. He promised to write plaintiff in error a notice when he got to Rock Island that night not to pay the money to Landretto. Defendant in error testified that her attorney told Roehm, at the bank, if he could hold the money and not let Landretto have any of it she and her attorney were going to leave for Rock Island that night and have the money attached as soon as they got there. Her testimony is: "And

he [Roehm] says he would hold it until we had time to reach Rock Island or had time to attend to it, and he said he would hold it for ten days, but thirty days would be the most." The conversations show that she had no right to rely upon the money being held up unless they acted promptly, but no letter was written and plaintiff in error was made a party defendant to the bill without an injunction against its paying the money to Landretto. It then owed her no money. Its officers had a right to assume that, no letter having been received though ample time for it to arrive had elapsed, the suit had been abandoned. The parties are in a court of equity and must act promptly in the protection of their rights as against the holder of a fund subject to be paid on demand. Roehm told them plainly that he could not withhold the money if Landretto presented the pass-book and order unless the bank had a "properly authorized writ of injunction." When the receipt was presented by Landretto and no notice received, as promised, the bank was acting within its rights in paying the money. It was under no contract to pay it to defendant in error. No facts existed giving rise to an equity to pay it or requiring the bank to pay it to her. In any view that can be taken of the facts presented by the record the decree cannot be sustained.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to dismiss the bill for want of equity as to plaintiff in error.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARMER, dissenting.