PER CURIAM.
The appellants, plaintiffs below, appeal from a final summary judgment in favor of the appellee, First Federal Savings and Loan Association of Lakeland, a national banking corporation.
On December 8, 1958, Mrs. Josephine S. Yarnell Tibado opened a solely owned savings account at appellee, First Federal Savings and Loan Association of Lakeland. The total amount of this account as of July 17, 1963, was $31,129.97. No payment was made to Mrs. Tibado on July 17, 1963, or at any time thereafter.
On July 18, 1963, Mrs. Tibado’s husband, Clarence J. Tibado, presented to appellee a new signature card listing both Mr. Ti-bado and Mrs. Tibado for the savings account of Josephine Tibado. Appellee contends that at this time the savings account became a joint tenancy account. The appellants contend to the contrary.
On July 19, 1963, Mr. Tibado withdrew $1500 from the account. On September 12, 1963, he withdrew the balance of $29,629.-'97 from the savings account, which account was then marked “closed” by the ap-pellee, First Federal Savings and Loan Association of Lakeland.
*335 On May 30, 1966, the Lake Wales Bank & Trust Company, as guardian of Mrs. Tibado, then mentally incompetent, made a written demand upon the appellee for the $31,129.97 owed her from the savings account. This written demand was rejected by the appellee on June 9, 1966. A suit was filed on June 20, 1966, and on the death of Mrs. Josephine Tibado on May 5, 1967, her testamentary heirs were substituted as parties plaintiff. A final summary judgment was entered by the trial court from which this appeal ensued.
As we have mentioned above, this account was individually established by Mrs. Tibado and later was changed to a joint account and a signature card was signed by both Mrs. Tibado and Mr. Tibado. The account contract, which is involved in this case, is as follows:
“A. Tibado, Mrs. Josephine Yarnell and
and B. Tibado, Mr. Clarence J. (hush — added 7-18-63)
and C._
Type All Names (Last Name) (First Name) (Middle Name)
as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for a savings account in
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LAKELAND and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants’ signatures, shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties are and shall he conclusively intended to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, subagents or others or for any casualty. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to this account, including expense incurred, and any other outside expense incurred relative to this account may be charged to it.
A.s/Josephine Yarnell Tibado_Rt. 2, Highland Park
Signature (Type) Street City & State Phone
B.s/Clarence J. Tibado_Lake Wales_44511
Signature (Type) Street City & State Phone
Date 7-18-63”
*336 It will be observed that the appellee was authorized by the signatures of Mr. and Mrs. Tibado to pay, without any liability for such payment to anyone, to the survivor or survivors at any time. It was agreed between the parties that any funds placed in or added to the account by either of the parties are and shall be conclusively intended to be a gift and delivery at that time of such funds to the other signatory party.
The appellee was authorized to accept checks and other instruments for credit, whether payable to one or more of the parties and to supply any needed endorsement.
In the case of Landretto v. First Trust & Savings Bank of Chicago, 1928, 333 Ill. 442, 164 N.E. 836, it was held that the right to draw and the duty to pay checks against joint bank accounts rest on contract, and does not depend on the ownership of the fund. It also held that the agreement of the parties is the law governing their rights, unless contrary to some rule of positive law or principle of public policy. The Court, in its opinion, p. 839, said:
“Joint bank accounts are not uncommon. The question here presented is uncommon so far as precedents disclose. The right to draw and the duty to pay checks against the account rest upon contract. It does not depend upon the ownership of the fund. No case like it has been cited, and none has been found. It is elementary doctrine, often repeated, that the agreement of parties is the law governing their rights, unless contrary to some rule of positive law or principle of public policy. When the Landrettos deposited the money, they signed the agreement, without which the deposit would not have been accepted. They are bound by it as between themselves and between them and the bank. The only condition annexed was that the one to whom it was paid should give to the bank a receipt or acquittance for the sum paid. For the $2,000 which Lizzie Landretto drew the receipt read: ‘Received of the First Trust and Savings Bank two thousand dollars, which amount charge to my account,’ giving the passbook number. Landretto signed the same sort of receipt when he withdrew the remainder, closing the joint account. She could thereafter draw no money from it, because all had been drawn according to their contract. The contract was thereby terminated.
“Plaintiff in error was not derelict in any duty it owed to defendant in error when it permitted Landretto to withdraw the remainder of the money from the joint account. The contract placed no restriction on the amount either might draw or the disposition or use of it. After the remainder of the joint deposit was drawn by Landretto, he deposited it in the bank to his personal account. The ownership of the money deposited was not involved in either deposit. The bank was indebted to the depositors to the amount of the deposit until withdrawn. * * * ”
While this case involves a savings and loan association, the factual situation is very similar to joint accounts held by both national and state banks. A joint account signature card from a national bank in Florida provides the rules for withdrawals from an account. These rules, which follow, are very similar to the rules of the savings and loan association in this particular case.
“You are hereby notified that all funds now on deposit and all sums hereafter placed to the credit of the above entitled account are the joint property of the undersigned. Pursuant to agreement between the undersigned, in the event of the death of either, title to all monies and property then remaining to the credit of said account immediately passes to and *337 vests in the survivor. You are authorized to recognize either of the signatures below in payment of funds or the transaction of any other business. Either one or both or the survivor to sign checks. The signature of either one to be sufficient for withdrawal of all or any part of the funds standing to the credit of this account. It is agreed by the depositor that this account shall be subject to service charges now in effect or that may be determined upon from time to time. On all balances of less than $100.00 which become dormant and remain so for a period of six months, a maintenance charge of $1.00 per month is to be made beginning six months from the date of the last entry. Rules printed on the back of this card are hereby agreed to.”
In Kramer v. First National Bank of Homestead, Fla.App. 1964, 163 So.2d 341, the Third District Court of Appeal had a case which was very similar to the one here. One, Jerry Kramer and her daughter, Karon, held a savings account in the bank as joint tenants with right of survivorship. While Jerry was in a hospital Karon drew money from the account without presenting the passbook as required by the bank’s rules. The bank argued it was protected by Florida Statutes 656.33 and 659.29, F.S. A., which are “Accounts-In-Two-Names” Statutes, and which are very similar to Florida Statutes 665.15, F.S.A. applying to savings and loan associations. The Court of Appeal held that the bank was not liable, that either of the parties could withdraw under the contract.
Regardless of the unfortunate results of Mr. Tibado’s actions in withdrawing these funds in relation to the heirs of Mrs. Tiba-do, we must uphold the decision of the able circuit judge in this case.
Affirmed.
PIERCE, Acting C. J., and MANN, J., and ALLEN, J. (ret.), concur.