756

*In re* ESTATE OF ELIJAH MUHAMMAD, Deceased (Marie Muhammad Farrahkan *et al.*, Petitioners-Appellees *v.* The First Pacific Bank of Chicago, Respondent and Third-Party Plaintiff-Appellant and Cross-Appellee (The Nation of Islam *et al.*, Third-Party Defendants-Appellees and Cross-Appellants)).

First District (4th Division) Nos. 82—600, 82—2321 cons.

Opinion filed March 22, 1984.—Rehearing denied May 24, 1984.

Jenner & Block, Seki, Jarvis & Lynch, and Seyfarth, Shaw, Fairweather & Geraldson, all of Chicago, for appellant.

Cook Partners and LaFontant, Wilkins & Ware, both of Chicago, for appellees.

Neil F. Hartigan, Attorney General, of Springfield, for *amicus curiae*.

JUSTICE JIGANTI delivered the opinion of the court:

Elijah Muhammad, the leader and Supreme Minister of an organization known as the Nation of Islam (the Nation), died in 1975 and was survived by a number of legitimate and illegitimate children. At the time of Elijah Muhammad's death, over $3 million remained in certain bank accounts at the First Pacific Bank of Chicago (the Bank). Based upon representations which shall be referred to later in this opinion, the Bank believed that the funds in the account belonged to the Nation. Following Elijah Muhammad's death, the Bank closed the accounts and transferred the funds into new accounts opened by the Nation, under which Wallace Muhammad, Elijah Muhammad's successor as leader of the Nation, was a signatory. The propriety of the Bank's transfer of funds to the Nation forms the backdrop for all of the issues raised in this appeal.

Elijah Muhammad's estate subsequently went into probate. A number of his legitimate and illegitimate children (the Estate) filed a recovery citation proceeding on behalf of the estate against the Bank, asserting that the funds which had been transferred to the Nation were Elijah Muhammad's individual accounts and were therefore a part of his estate. Thereafter, the Bank filed a third-party claim against the Nation and nine of its affiliates (hereinafter referred to collectively as the Nation). The Bank maintained that if it was ultimately found liable to the Estate, the Nation was unjustly enriched by the transfer of funds and the Bank was therefore entitled to restitu-

tion.

The trial court entered judgment in favor of the Estate in the recovery citation proceeding. The Bank now appeals from that judgment. In the third-party proceeding, the trial court ruled in favor of the Bank but granted only a portion of the relief sought. The Bank also appeals from this ruling, and the Nation cross-appeals.

The record and briefs in this case are extensive and reveal a veritable litany of facts and events pertinent to the issues raised by the parties. For the purpose of clarity, we shall address the relevant facts in conjunction with each issue. The central issue on appeal is raised by the Bank. The substance of the Bank's argument is that, even if Elijah Muhammad was found to be the contractual and legal owner of the accounts, the court was required to determine whether the equitable and beneficial ownership of the accounts rested in someone other than Elijah Muhammad, namely, the Nation. The Bank does not concede that the trial court properly found Elijah Muhammad to be the contractual owner of the accounts and thus also raises the issue of contractual ownership on appeal. A number of additional and peripheral issues have been raised by the parties and shall be discussed later in this opinion.

The Bank and the Nation first argue that, as a matter of law, the trial court improperly refused to admit or consider evidence of equitable ownership. The Bank and the Nation further maintain that, because the Nation was allegedly the equitable owner of the accounts, the Bank properly transferred the funds to the Nation. In contrast, the Estate contends that the court was bound to look exclusively to the contractual or legal ownership of the accounts as evidenced by the contract between the Bank and the depositor. Consequently, the Estate argues that because Elijah Muhammad was allegedly the accounts' contractual owner, the trial court properly found that the Bank's transfer of funds to the Nation was unlawful. Thus, before considering the factual question of the actual identity of the accounts' contractual or equitable owners, we must decide one threshold question of law: whether the court was required to consider relevant evidence of equitable ownership.

As a general rule, the relationship between a bank and its depositor is one of creditor and debtor. (See generally 5 Michie, Banks and Banking sec. 79, at 216 (1950); *Union Stock Yards National Bank v. Gillespie* (1890), 137 U.S. 411, 422, 34 L. Ed. 724, 728, 11 S. Ct. 118, 122.) The Estate's position is that this contractual relationship applies for all purposes and that the court may not inquire as to whether the beneficial ownership of an account lies in one other than the contrac-

tual depositor. Following our review of the case law in this area, we disagree with the Estate's contention.

■■ For over a century the United States Supreme Court has ruled that courts may exercise their equitable powers to determine the beneficial or equitable ownership of a bank account. In *Central National Bank v. Connecticut Mutual Life Insurance Co.* (1881), 104 U.S. 54, 66, 26 L. Ed. 693, 699, the court stated: "But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, To whom in equity does it beneficially belong?" (Accord, *Union Stock Yards National Bank v. Gillespie* (1890), 137 U.S. 411, 422, 34 L. Ed. 724, 728, 11 S. Ct. 118, 122.) Both of the Supreme Court decisions cited above further lead us to believe that when a bank has either actual or constructive notice that the beneficial ownership of an account lies outside the legal title, the bank may not deal with the account's contractual owner to the detriment of the equitable owner. Thus, evidence of equitable ownership must be considered by the court because the rights of an equitable owner may control over those of an account's contractual owner when the bank has been put on notice regarding the existence of an equitable owner. See also 5 Michie, Banks and Banking sec. 79, at 217 (1950) ("*** the true ownership of a deposit may be proved to be in another than the person in whose name it is made").

In *Hanna v. Drovers' National Bank* (1901), 194 Ill. 252, 257, the Illinois Supreme Court accepted the above reasoning and stated: "It may be conceded that, as a general rule, it is the duty of a banker to pay money on deposit with it to the party in whose name it is deposited; but where it has notice of the fact that the fund belongs to another, it may refuse to pay it to the depositor and be compelled to pay it to the real owner." Furthermore, when the issue of equitable ownership arises, relevant evidence may include facts surrounding the creation and history of the account (see *In re Estate of Cronholm* (1962), 38 Ill. App. 2d 141, 186 N.E.2d 534; 5 Michie, Banks and Banking sec. 369b, at 346-47 (1950)), as well as facts reflecting the intent of the depositor and the source of the funds (see *People ex rel. Nelson v. Bank of Harvey* (1934), 275 Ill. App. 415).

■ The Estate nonetheless contends, without addressing or attempting to distinguish the cases cited above, that this court is bound by *Landretto v. First Trust & Savings Bank* (1928), 333 Ill. 442, 448, 164 N.E. 836, 839, wherein the Illinois Supreme Court stated: "The right to draw and the duty to pay checks against the account rests upon contract. It does not depend upon the ownership of the fund."

In *Landretto*, a husband and wife possessed a joint bank account from which the husband withdrew all of the funds. The wife, a joint depositor and authorized signatory of the account, sued the bank and claimed that because she had earned all of the money in the account, the bank improperly permitted the husband to withdraw the funds. The court held that the bank was not liable for paying the funds to the husband, who was the other joint depositor and authorized signatory. The court never considered or ruled upon the issue of equitable ownership but simply found that if a bank pays funds to one of two joint depositors, the bank will not be liable. The *Landretto* holding concerning joint bank accounts is presently codified in section 2(a) of "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1981, ch. 76, par. 2(a)). The instant case does not address *Landretto's* narrow issue of a bank's role in relation to actions taken by a checking account's joint owners; rather, it concerns the propriety of the Bank's payment of funds to an alleged equitable owner (the Nation) rather than to an alleged contractual owner (the Estate).[1] We conclude that *Landretto* does not vary or contradict the legal principle set out above that if a bank has notice of an equitable owner of an account, it may be required to pay funds on deposit to the account's equitable rather than contractual owner. We therefore find that the trial court in the instant case was required to consider relevant evidence of the equitable ownership of the accounts at question.

The Estate contends that even if the court was bound to consider evidence of equitable ownership, the trial court properly did so in this case prior to reaching its decision. The record discloses, however, that throughout the trial, the trial court repeatedly stated that *Landretto* controlled the court's decision and that the source of the funds in the account and thus the beneficial ownership of the account were of no consequence. On at least five occasions the trial judge specifically cited the *Landretto* case in ruling upon the admissibility of certain evidence and testimony, finding that the beneficial ownership and the source of the funds were not relevant to the issues in the recovery citation proceeding. The court also repeatedly found that the contractual relationship between the Bank and its depositor was the sole factor to be considered in determining who was entitled to the funds in

---

[1]As we shall discuss later, we believe it would be premature to decide whether the trial court properly found the Estate to be the contractual owner of the accounts. We are therefore offering no opinion here as to the identity of the accounts' contractual or equitable owners.

the accounts. Indeed, the focus of the entire trial was the identity of the contractual depositor as defined by the contract documents and other extrinsic evidence which clarified the provisions of the documents and the events surrounding the creation of the contractual relationship. The case was tried purely as a case of contractual ownership, although evidence of beneficial ownership was allowed to a certain extent for purposes of the third-party restitution action between the Nation and the Bank. The court stated, however, that between the Estate and the Bank, the ownership and source of the funds were irrelevant.

Based upon our previous discussion of equitable and beneficial ownership, we believe the trial court erroneously found that equitable ownership was not a pertinent issue in this case. Although evidence was admitted on this issue for other purposes, the court never considered evidence which arguably determined whether the Bank or the Estate was the equitable owner of the accounts. Because we have found that the rights of an equitable owner may be superior to those of an account's legal owner, we think that the parties were entitled to have the trial court specifically consider the issue of equitable ownership. The issue may be determinative of the entitlement to the funds in the accounts and, for this reason, we reverse and remand the action between the Bank and the Estate to the trial court for a new trial.

We offer no opinion here concerning the contractual ownership of the accounts because we believe that the issues of contractual and equitable ownership are intertwined to such an extent that they should be considered together by the trial court after all relevant evidence has been presented. Furthermore, because the third-party restitution action between the Nation and the Bank hinges upon the outcome of the recovery citation trial, we reverse and remand that action as well.

■ Both the Bank and Estate have argued that if this court determines that equitable ownership must be considered, there is sufficient evidence in the record for the appellate court to determine the issue and that it is therefore unnecessary to remand the case to the trial court for further proceedings. Both parties cite this court to extensive amounts of evidence, testimony and offers of proof which each party contends conclusively and overwhelmingly establishes itself as the accounts' equitable owner. We believe that the weighing of this evidence, as well as the admissibility of additional evidence offered as proof of equitable ownership, are matters to be decided by the trial court sitting as the trier of fact. The trial judge has the opportunity

to assess the credibility of witnesses and weigh the evidence, and is in a better position than an appellate court faced with a cold record to consider an issue which has not yet been specifically litigated and decided. At this point we cannot speculate as to what the evidence would reveal once the case centers upon the issue of the equitable rather than the contractual ownership of the accounts. We therefore find it necessary to reverse and remand this cause to the trial court for a determination of the equitable ownership of the accounts. Because the remaining issues on appeal raise questions that may recur at the trial level, we shall consider them as well so as to facilitate the trial court proceedings on remand.

The Bank next argues that it can in no event be held liable for conversion in the recovery citation proceeding because the Estate had the burden of proving all of the elements of conversion and did not do so. Under the recovery citation statute in Illinois, a citation to recover assets may be filed by anyone "interested in the estate" against one who is believed to have "concealed, converted or embezzled or [has] possession" of assets belonging to the Estate. (Ill. Rev. Stat. 1981, ch. 110½, par. 16—1(a).) The Bank correctly observes that, at the time the recovery citation proceeding was filed by the Estate, the Bank had already transferred the funds to the Nation and therefore did not have "possession" of the funds. Furthermore, the Estate has never alleged or argued that the Bank "embezzled" or "concealed" the funds in the accounts. Thus, under the statute, it was incumbent upon the Estate to prove that the Bank had "converted" funds belonging to the Estate in order to prevail in the recovery citation proceeding.

A party claiming a conversion must show: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof. (*Farns Associates Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 395 N.E.2d 1103; *People ex rel. Carey v. Lincoln Towing Service, Inc.* (1977), 54 Ill. App. 3d 61, 369 N.E.2d 94.) Our examination of these four elements leads us to conclude that whether the Estate has made out a case for conversion under the recovery citation statute will be largely dependent upon the trial court's determination of the issues of equitable and contractual ownership upon remand. The Estate contends that this is "substantially more than a mere conversion case" and that "the niceties of the law of conversion *** have no relevance whatever" to a recovery citation proceeding such as that at issue here. However, the

Estate cites no authority, and indeed we have found none, that the legislature intended the elements of conversion to be examined under a different standard when a cause of action alleging conversion is stated under the recovery citation statute. The statute specifically provides that a recovery citation proceeding may only be brought against one who is believed to have "concealed, converted or embezzled or [has] possession" of assets belonging to the Estate. (Ill. Rev. Stat. 1981, ch. 110½, par. 16—1(a).) In order to be entitled to the relief sought, we believe that the petitioner in a recovery citation proceeding must demonstrate that the respondent actually concealed, converted, embezzled or has possession of estate assets. We further think that those terms must be accorded their ordinary legal definitions absent a contrary expression of intent from the legislature. Therefore, when this case is remanded on the issue of equitable ownership, it will be necessary for the trial court to assess whether the Estate has proved each of the four elements of conversion and is thus entitled to relief under the recovery citation statute.

■ Four separate estoppel arguments have also been raised on appeal by the Bank and the Estate. First, the Estate contends that the Bank is estopped from asserting that the funds belonged to anyone other than Elijah Muhammad individually because the Bank allegedly treated the accounts as Elijah Muhammad's individual accounts for the entire period of their existence. Second, the Bank asserts that the Estate is estopped from arguing that the transfer of funds was wrongful because Elijah Muhammad and the persons who dealt with the Bank on his behalf allegedly represented that the funds belonged to the Nation. Third, the Bank maintains that the legitimate children of Elijah Muhammad are estopped from challenging the transfer of funds because they signed a letter representing that the funds belonged to the Nation and because they remained silent for four years before disputing the validity of the transaction. Finally, the Bank contends that the illegitimate children of Elijah Muhammad are estopped from taking part in the recovery citation proceeding because they had no legally recognized interest in the accounts at the time of the alleged conversion.

Estoppel is ordinarily a question of fact. (*Forest v. Forest* (1973), 9 Ill. App. 3d 111, 291 N.E.2d 880.) The party who asserts the existence of estoppel has the burden of proving it, and the proof must be clear, precise and unequivocal. (*City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 349 N.E.2d 532.) We believe that the first three estoppel arguments raised by the parties are purely factual matters which we believe the trial court should consider on remand when it has be-

fore it all pertinent evidence of equitable and contractual ownership of the accounts. The fourth argument, raised by the Bank in relation to the illegitimate heirs, presents a question of law which is not properly before this court now. The Bank has never before raised this issue in its pleadings or at trial. If properly raised at the new trial on remand, the matter may be considered by the trial court; however, it would be inappropriate for this court to make a final determination on the issue at this time.

■ The Estate also asserts on appeal that the Nation is a "theocratic religious and racial concept" rather than "an organization cognizable by the law" to which the funds could have been legally transferred. However, we shall not address either the ramifications or the merits of this argument because the Estate clearly admitted in its verified answer to the Bank's verified amended affirmative defenses that "[t]he Nation of Islam is a religious organization." Once a statement of fact has been admitted in a party's pleadings it is binding upon the party making it, and it makes it unnecessary for the opposing party to introduce evidence in support thereof because it has the effect of withdrawing the fact from issue. *First National Bank v. Sousanes* (1981), 96 Ill. App. 3d 1047, 422 N.E.2d 188.

For the reasons herein stated, the action between the Bank and the Estate and the third-party action between the Bank and the Nation are reversed and remanded for new trials.

LINN, P.J., and ROMITI, J., concur.