(No. 25043.—
MERRY FAHRNEY BERLINGIERI, Appellant, *vs.* ARTURO BERLINGIERI, Appellee.

*Opinion filed June 15, 1939—Rehearing denied October 4, 1939.*

FRANK E. CANTWELL, for appellant.

KAMFNER & HALLIGAN, (EDWIN A. HALLIGAN, and SAMUEL M. LANOFF, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

Merry Fahrney Berlingieri obtained a divorce from Arturo Berlingieri in the circuit court of Cook county on the ground of cruelty. On appeal to the Appellate Court for the First District, this decree was reversed and we granted Mrs. Berlingieri leave to appeal from that decision.

Mrs. Berlingieri testified at the trial that she and Arturo Berlingieri were married in Harrison, New York, on July 31, 1937; that she was now living at the Ambassador Hotel in Chicago and that she had resided in that city all of her life. It further appears from the record that after her marriage in New York, on July 31, 1937, she and her husband remained at separate hotels in New York until August 3 of that year; on that date she left for California by train and he followed her by automobile. She testified that her husband struck her in their hotel apartment in California on August 7, on August 11, again on August 15, and a fourth time on August 20. Robert Chayne, her chauffeur, testified that he was outside the Berlingieri suite of rooms on August 7 and heard the plaintiff scream and that when he saw her immediately thereafter her face was inflamed. Anita Sparks, Mrs. Berlingieri's maid, corroborated the testimony of her mistress that defendant struck her on August 20. The husband denied on the witness stand that he had struck his wife at any time.

Two issues have been raised throughout the proceedings in this case: (1) Had Mrs. Berlingieri been a *bona fide* resident of Illinois for a year prior to the filing of her suit, and (2) is there sufficient testimony in the record to support the allegations of cruelty in the complaint? Section 3 of the Divorce act (Ill. Rev. Stat. 1937, chap. 40, par. 3) provides that "No person shall be entitled to a divorce in pursuance of the provisions of this act, who has not resided in the State one whole year next before filing his or her complaint or petition, unless the offense or injury complained of was committed within this State, or while one or both of the parties resided in this State." Defendant contends that the word "residence" in the provision just quoted was intended to mean "domicile" even though it is nowhere expressly so stated. In support of this contention he cites cases where the word "residence" in the Revenue act and other statutes has been so construed. Such cases, however,

are not authority here. We have already interpreted this section of the Divorce act in *Way* v. *Way,* 64 Ill. 406, where we held that the word "residence" as used there was intended to have its ordinary and commonly accepted meaning. This construction was followed by us in *Hill* v. *Hill,* 166 Ill. 54.

The present case is an example of the absurd results that would follow from any other interpretation. It appears that Arturo Berlingieri, who is thirty-three, is an international itinerant, with his birthplace and parents in Rome. He claims his home there, although he has not seen his parents for three years and stays at hotels when in Rome. He also claims a residence and to have lived at different times on the Isle of Capri and with an uncle who resided in Colombia. While the proof fails to show that Berlingieri has ever established a permanent domicile in any country, his technical domicile may be said to be in Italy and thus it is argued that, under established rules of law, Mrs. Berlingieri's domicile would follow that of her husband. We do not believe that the legislature intended to withhold the right of access to our courts from a life-long resident of this State merely because she happened to marry someone technically, but not actually, domiciled elsewhere. The use of the concept of domicile in revenue cases and like matters is based upon reason and practical necessity. For example, there must be one place having jurisdiction to tax personal property; otherwise, the conflicting claims of various taxing authorities would result in confusion and possible depletion of an estate subject to tax. No such necessity appears in divorce cases. The mere fact that a person may have more than one residence and, therefore, may possibly secure a divorce in more than one jurisdiction under our interpretation of the statute, does not render that interpretation improper. The wife's established domicile in Illinois could not shift to that of her husband

until he had established one elsewhere—and this his own testimony shows he had not done.

We also believe that plaintiff has established acts of cruelty by her husband conclusively on at least two occasions and possibly upon four. In the instances described, she was subjected to physical abuse and this is all that the statute requires. (*Trenchard* v. *Trenchard,* 245 Ill. 313; *Fizette* v. *Fizette,* 146 id. 328; *Wesselhoeft* v. *Wesselhoeft,* 369 id. 419.) While the defendant denied that he struck his wife on any of the occasions described by her, her chauffeur and her maid, the chancellor heard all of these witnesses and his findings will not be disturbed unless they are against the manifest weight of the evidence. (*Lewis* v. *Lewis,* 316 Ill. 447; *Arliskas* v. *Arliskas,* 343 id. 112.) Such is not the case here.

The judgment of the Appellate Court for the First District is reversed, and the decree of the circuit court of Cook county is affirmed.

*Appellate Court reversed; circuit court affirmed.*