In Matter of Estate of Ruth Herron Owens, also Known as Ruth Herron Dennis, Deceased.
Appeal of Tready Jackson Smith, Executrix Under Last Will and Testament of Ruth Herron Dennis, Deceased, Petitioner Below, Appellant, v. Richard A. Dennis, Respondent Below, Appellee.

**Gen. No. 46,632.**

First District, First Division.

October 31, 1955.

Released for publication November 16, 1955.

Richard Altieri, of Chicago, for appellant.

Chino & Schultz, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

The executrix of the will of Ruth Herron Dennis, deceased, appeals from an order of the Superior Court of Cook County finding that the lawful surviving husband of decedent is the respondent, Richard A. Dennis. The Probate Court of Cook County, where the matter was first heard, had found that decedent's marriage to Dennis was void because she was previously married to Flenoid Owens who was still living at the time of her death. The Superior Court found that decedent's previous marriage to Owens was dissolved by a divorce decree entered on July 21, 1927 in the District Court of Pushmataha County, Antlers, Oklahoma. The estate, on the other hand, contends that Owens' marriage was not dissolved, and that the decree of divorce introduced in evidence in the Superior Court proceeding was a false record.

The facts essential to an understanding of the controversy are that Ruth Herron and Flenoid Owens, residents of Guthrie, Oklahoma, were married there on June 19, 1916. At first they lived with her family; later they moved to Okmulgee, Oklahoma, where, from 1919 to 1921, they resided at the home of a Mrs. Fields. In 1921 Owens left his wife because of strained relations, while she continued to live at the Fields home for another two years.

In June 1923 Ruth Owens sued her husband for divorce in Okmulgee County, Oklahoma. Owens filed a general answer and waiver of summons. The suit was dismissed November 23, 1924. In 1925 the parties lived together for five weeks in Tulsa, Oklahoma, and then separated again, when Owens left his wife the second time. Ruth Owens subsequently established residence in various places, including Kansas City, Missouri, and ultimately located in Chicago, Illinois, where she died January 5, 1953. On July 21, 1927 Ruth Owens divorced Flenoid Owens in Antlers, Oklahoma, the decree having been signed by Judge Earl Welch, then a dis-

trict judge and now a member of the Supreme Court of Oklahoma, where he has served for more than fifteen years. The executrix contends that the decree is a forged and false record.

It further appears that Flenoid Owens married Nettie Wilkas in Drumright, Oklahoma in 1927; she died January 5, 1935. Ruth Herron married Sidney Johnson in Chicago on July 26, 1928, and divorced him in the Superior Court of Cook County, Illinois, on July 22, 1938.

On May 5, 1937 Flenoid Owens married Kanzella McGee in Guthrie, Oklahoma; that marriage was annulled in San Francisco, California, at the instance of the wife, on August 7, 1950, on the ground of the insanity of Owens at the time of the marriage. Owens had first been declared incompetent on July 28, 1945 and committed to the State Hospital for the Insane in Taft, Oklahoma; he was discharged on December 6, 1946, ordered readmitted on October 30, 1947 and again on July 23, 1951; on June 22, 1953 the Logan County Court of Oklahoma declared Owens to be of sound mind; however, his death on July 11, 1954 occurred in the state mental institution.

The deceased married the respondent, Richard A. Dennis, in St. Louis, Missouri, on April 15, 1940, where they lived together until a divorce suit was filed by Ruth Dennis in 1948; the suit, however, was dismissed as the result of a reconciliation. The parties lived apart from October 28, 1942 to May 15, 1944, while Dennis was serving in the army. They separated a second time on December 31, 1950 and were living apart at the time of her death, January 5, 1953. On May 21, 1951 the deceased had executed a will as Ruth Herron Dennis, naming her sister Tready Jackson Smith as executrix and bequeathing all her property to the two sons of the executrix.

Flenoid Owens and Jewel McGill were living as husband and wife in Guthrie, Oklahoma, without benefit of

clergy, for some time prior to Ruth Dennis' death. His marriage to Kanzella McGee having been annulled, and while he was still incompetent, he married Jewel Mc-Gill on April 26, 1953 in Oklahoma City, Oklahoma. No children were born to any of the parties as the result of these various marriages.

The will of Ruth Herron Dennis was admitted to probate in Cook County, Illinois, on April 27, 1953; on that day, and again on May 27, 1953, Richard Dennis renounced the will under the statute. The property inventoried in the estate consists of $30,000 in realty and of $22,379.22 in personalty. After Dennis' first renunciation, the executrix, her sister and a brother visited Flenoid Owens in Oklahoma in May 1953. On being asked if he had ever obtained a divorce from Ruth Herron, he replied that he had not. The executrix then filed a petition in the Probate Court to amend the table of heirship in the estate so as to show that Flenoid Owens was the surviving husband of the deceased. That petition, which was originally notarized in February 1953, had the date overlined to read June 2, 1953, and was filed on June 3, 1953; it alleged that the marriage between the deceased and Richard Dennis was void because she had never been divorced from Flenoid Owens. Dennis filed an answer to the petition, denying all material allegations thereof, other than the death of deceased, and reasserted his status as her surviving husband.

On June 22, 1953 Flenoid Owens was declared competent in Oklahoma; thereafter, on July 14, 1953, while proceedings were pending in the Probate Court, Elliodor Libonati, an associate of the attorney for the executrix who was handling the estate, visited the courthouses of Logan, Creek, Pittsburgh, Tulsa, Okmulgee and Payne Counties of Oklahoma, and of Jackson County of Missouri, and checked, over a period from 1916 to 1950, for a possible divorce record between the deceased and Flenoid Owens; he found only a divorce

431

suit in Okmulgee County which had been dismissed in 1924.

In the hearing in the Probate Court on August 13, 1953, Owens denied any marriages other than those to the deceased and to Jewel McGill, which had taken place after the deceased's death. The Probate Court, on August 14, 1953, entered an order finding that Owens was the surviving husband of the deceased and that their marriage had never been terminated, and amended the table of heirship accordingly. Thereupon Dennis perfected his appeal to the Superior Court, where a trial de novo began December 1, 1953 and continued sporadically until September 23, 1954, on which date the trial judge entered an order finding that Richard A. Dennis, rather than Flenoid Owens, was the lawful surviving spouse of the deceased. Flenoid Owens had died in an Oklahoma mental institution on July 11, 1954, without having renounced the deceased's will.

In their respective briefs the parties set forth, at great length and in detail, testimony adduced in the Superior Court, much of which is conflicting, but in the view we take the greater part of it is not relevant to a decision of the issues involved and need not be recounted here. The salient question upon which the decision must rest is whether Ruth Herron, the deceased, was divorced from Flenoid Owens prior to her marriage to Richard Dennis, and whether the divorce decree entered in Oklahoma could be attacked collaterally on grounds of fraud in the Superior Court of Cook County. The court here found that it could not.

In the course of the hearing, respondent testified that after he learned of the divorce proceedings in Antlers, Oklahoma, he was advised that the courthouse there had burned, and that some of the records had been destroyed in the fire; that he had employed an attorney there by the name of Edward Dudley, who called him two or three days later and asked him to come back to Antlers; that Dudley had located the

attorney, F. L. Welch, who had handled the divorce case for the deceased, and that Welch produced in court an original duplicate of the divorce decree, whereupon the decree was restored. F. L. Welch was a brother of Earl Welch, the judge who had signed the decree originally and who had then been a member of the Supreme Court of Oklahoma for fifteen to twenty years, and its past chief justice. Petitioner was not notified of the restoration proceeding in Oklahoma, nor was she a party thereto, and her counsel argues that this circumstance renders the restoration proceeding invalid. However, the court in Oklahoma, in restoring the lost and destroyed decree, found that no notice was required under the restoration statutes of that state and found further that the duplicate original of the decree presented amounted to an original decree "of equal and more force and importance than a certified copy would be thereof." When Flenoid Owens learned of the order of restoration, he filed a petition pro se to vacate the order and divorce decree and caused a non-resident summons served on both Richard Dennis and the executrix. The executrix submitted herself to the jurisdiction of the Oklahoma court by filing her consent to the petition. The Oklahoma court denied Owens' petition, and the petition of his administratrix and no appeal was taken from that order of dismissal. A copy of respondent's petition to restore the lost and destroyed decree of divorce, and the order entered thereon, was introduced in evidence in the Superior Court. Respondent also introduced into evidence a copy of Owens' petition to vacate the order restoring the lost decree, as well as a copy of the order dismissing the petition, and a copy of the death certificate of Flenoid Owens showing that he had died on July 11, 1954, an inmate of Taft Hospital. There was also introduced in evidence a copy of the marriage license and certificate issued on April 4, 1927 at Drumright, Oklahoma, to Flenoid Owens and Nettie Wilkas, as well as a copy of

the marriage license and certificate of Flenoid Owens and Jewel McGill, dated April 26, 1953, at Oklahoma City, Oklahoma, and copies of the files in the insanity proceedings of Flenoid Owens, with dates of commitment, release, restoration and history. In one of these exhibits Flenoid Owens was termed a single person, and as of July 21, 1951 was living with a common-law wife, Jewel McGill.

In her brief petitioner is forced to urge either: (1) that the Pushmataha County divorce decree was actually granted but is invalid because the deceased had not been a resident of that county for the necessary statutory period, or (2) that the Pushmataha County decree had never been in existence, and the duplicate original thereof was forged and the restoration on the basis of such forgery was obtained by fraud. These two positions are incompatible; nevertheless, petitioner argues both of them in her brief. As to the first premise, she contends that her witnesses established the fact that the deceased had never lived in Antlers, Oklahoma, but was at the time of the divorce living with Sidney Johnson in Chicago; she supports the second theory by contending that her "offer of proof" should have been permitted to show that the judge could not have signed the duplicate original decree because he was also present on that same day in a different county, and that expert testimony would show the document to be a forgery by signature and typewriting.

Of course, if petitioner contends that the decree in Oklahoma was invalid because of lack of residence there, she must admit that it was entered there in the first place, and consequently she would be forced to the position of attacking the decree on the ground of fraud. However, on this phase of the case it has been held that such an attack may not be made in another state unless by one who did not perpetrate the fraud or who was not in privity with such person, i. e., the attack may be made only by an innocent party. A discussion

434

of this principle will be found in the University of Illinois Law Forum, Vol. 1941, No. 4, p. 567. See also Dow v. Blake, 148 Ill. 76.

 Upon the foregoing state of the record there followed a colloquy in the Superior Court as to whether petitioner could attack in Illinois the decree of divorce on the ground that it had been procured in Oklahoma through decedent's alleged false representations as to her periods of residence in Pushmataha County; the court here found that such attack could not be made in Illinois and held that an attack on the method of restoring the divorce decree and a determination whether the signature on the duplicate original decree was genuine or forged could be made only in the State of Oklahoma.

We think the court was correct in his ruling for the following reasons. We find no provision for notice in restoration proceeding in the Oklahoma statutes. Moreover, the order of restoration specifically found "under and by virtue of the Statutes of the State of Oklahoma covering the restoration of lost and destroyed records that no notice of this hearing was required to be given to any party and that this Court has jurisdiction to hear the same without notice to any party. . . . The Court further finds that a duplicate original of such decree of divorce . . . , duly signed by Honorable Earl Welch, the then District Judge . . . , showing said original decree to have been filed by and with the District Court Clerk of Pushmataha County, Oklahoma, on July 21, 1927, was preserved in the files of the attorney who represented Ruth Herron Owens in the divorce action hereinbefore referred to. . . . The Court further finds that the duplicate original of such divorce in effect amounts to an original of such instrument and is declared to be of equal and more force and importance than a certified copy would be thereof."

 If, on the other hand, it is the intention of the petitioner to show that the Pushmataha County decree

435

had never been in existence and the duplicate original thereof was forged, and that the restoration on the basis of such forgery was obtained by fraud, the question arises as to where the proper forum could be for such attack. Petitioner contends that the proper forum would be in the State of Illinois because the death of Flenoid Owens prevented her from making a direct attack on the decree in Oklahoma, but the record shows that the only attack on the decree made in the State of Oklahoma was by Flenoid Owens, who filed a petition to vacate the restoration and decree solely for lack of notice and the decedent's alleged lack of residence; it was not charged by Owens that any forgery had been committed; nor did petitioner herein join as a party there to Owens' petition to any such charge. Therefore, if the Oklahoma decree was to be attacked on the ground of forgery or falsification of court records, the proper place of attack would be the jurisdiction where the records were located, and the judge whose name was forged or otherwise used fraudulently would be available. His testimony as to the date of the execution of the duplicate or forgery of his signature, if such be the case, would be vital; and indirect evidence of experts on the authenticity of the signature would hardly be controlling as against his testimony. In summary, it is notable that the petition filed by Owens in Oklahoma did not raise the contentions here made by petitioner herein.

It seems strange indeed that after the numerous marriages and divorces of the parties, and after complete reliance on the divorce on all sides, Owens, after twenty-six years, should be presented as the surviving husband by the executrix, after both Ruth Herron Dennis and Flenoid Owens, the principals, have died. It is significant that the deceased herself considered the divorce valid, for she took means to divorce Sidney Johnson after marrying him, and twice instituted divorce suits (though in neither instance did she prose-

436

cute to a conclusion) against respondent, after marrying him, and that in her will she described herself as Ruth Herron Dennis. In Pierotti v. Pierotti, 343 Ill. App. 116, the court held that one who accepts the benefits and privileges of a divorce decree by a remarriage, even though the decree be void for want of jurisdiction, is estopped from thereafter assailing the decree, and quoted as follows from Cummings v. Huddleston, 99 Okla. 195, 226 Pac. 104: " 'If there were no established rule of estoppel in such cases, this would be a most excellent proceeding in which to establish one. However, the rule is well and generally settled that one who accepts the benefits and privileges of a divorce decree by a remarriage, even though the decree be void for want of jurisdiction, is estopped from thereafter assailing such decree. [Citing numerous cases.]' " And of course the executrix has no greater rights than the deceased. See Dow v. Blake, 148 Ill. 76.

For the reasons indicated, the judgment of the Superior Court should be affirmed, and it is so ordered.

Judgment affirmed.

BURKE and NIEMEYER, JJ., concur.