Email T. Emerton, Plaintiff-Appellee, v. Canal Barge Company, Inc., a Corporation, Defendant-Appellant.

Gen. No. 65–39.

Fifth District.

April 27, 1966.

Robert D. Barnes, McBride, Baker, Wienke & Schlosser, of Chicago, and G. Gordon Burroughs, Burroughs, Simpson & Burroughs, of Edwardsville, for appellant.

Sandor Korein and Joseph Cohn, Cohn, Cohn & Korein, of East St. Louis, for appellee.

GOLDENHERSH, P. J.

Defendant appeals from the judgment of the Circuit Court of Madison County entered upon a jury verdict in the amount of $100,000.

Plaintiff's complaint, as amended, is in two counts, Count I pleads a cause of action based on the Jones Act (Title 46, USCA, § 688 et seq.) ; Count II charges that

the vessel upon which plaintiff was working was unseaworthy.

The evidence shows that on February 23, 1963, plaintiff was 31 years old, had a seventh grade education, had worked as a farmhand, in a shipyard, in an automobile assembly plant, as a seaman, both on deep sea vessels and in the coastwise trade. Since 1955 he had worked on various motor vessels on the Mississippi and other rivers. He had passed an examination given by the United States Coast Guard and was licensed as a tankerman, and although he usually worked as a deckhand, at the time pertinent to this case, he was employed as a deckhand-tankerman.

The defendant is a Louisiana corporation with its principal place of business in New Orleans. The Motor Vessel Caroline, on which plaintiff was working at the time of his injury, is 104 feet in length, 30 feet in width, and at the time of the occurrence out of which this action arose, carried a crew of 11.

On February 23, 1963, at about 4:00 p. m., the Caroline was stopped at the Shell Oil Dock at Argo, in Cook County, Illinois. Plaintiff was on the bow deck and Bill Atkinson, another deckhand-tankerman was on an empty barge to which the Caroline was "faced up." Plaintiff and Atkinson were putting the wires on between the bow of the Caroline and the stern of the barge. Plaintiff had turned the winch to run slack out, and was pulling on the wire when his feet went out from under him. The temperature at the time was below zero, and the deck area where plaintiff was standing was covered with ice, snow and oil, and was slippery. Plaintiff did not know how long the condition of ice, snow and oil had existed, but he had observed it about 30 minutes before he fell.

After his fall plaintiff remained on the deck for a minute or so; he felt a sharp pain in his back as he lay there,

and after he got up. The sharp pain continued for about 2 days, then diminished, but he was not at any time thereafter without some pain. Plaintiff stayed on the vessel for 2 weeks during which time he performed his regular duties. He left the Caroline on March 11, 1963, and returned to his home at Baxter, Tennessee.

Defendant contends, as a ground for reversal, that the circuit court erred in denying its motion to dismiss, founded upon the doctrine of forum non conveniens. The motion, and the affidavit filed in support thereof, recite that it is a Louisiana corporation with its principal place of business in New Orleans, that plaintiff resides at Baxter, Tennessee, that the claim asserted by plaintiff arose while the Caroline was being operated in navigable waters of the United States and the state of Illinois, that the occurrence out of which plaintiff's claim arises took place in Cook County, Illinois, that at various times since the occurrence, plaintiff received medical treatment at Memphis, Tennessee, and was treated at clinics and by other physicians in other places in Tennessee, that dismissal of the Madison County suit and plaintiff's filing suit in either the United States District Court at Memphis or the Circuit Court of Shelby County, Tennessee will result in substantial savings in pretrial discovery expenses and the expense of trial for both plaintiff and defendant, that the officers and members of the crew of the Caroline who have knowledge of the occurrence reside in Louisiana, Arkansas and Missouri and can be made available for deposition or trial at Memphis at substantially less expense than elsewhere, that in the event defendant's motion to dismiss is allowed, defendant will voluntarily file a general appearance and will not contest the jurisdiction of either the United States District Court for the Western District of Tennessee or of the Circuit Court of Shelby County, Tennessee, that it will, in that event, cause the officers and crew members to appear at Memphis for deposition at plaintiff's convenience.

 The Jones Act created a right of action for injuries suffered by a seaman, based on the provisions of the Federal Employers Liability Act. Title 46, USCA, § 688; Kerman v. American Dredging Co., 355 US 426, 78 S Ct 394. The propriety of the circuit court's denial of defendant's motion to dismiss is, therefore, to be considered in the light of the decisions of the Supreme Court of Illinois in actions based upon FELA. In Cotton v. Louisville & N. R. Co., 14 Ill2d 144, 152 NE2d 385, at page 159, the Supreme Court, through Mr. Justice Bristow said "We hold, therefore, that there is available in Illinois the doctrine of forum non conveniens as a ground for refusal by a court to exercise jurisdiction over a cause of action *arising beyond the State's boundaries.*" (Emphasis ours.) We interpret this statement to mean that the doctrine of forum non conveniens is not applicable to actions arising within the state of Illinois, and the circuit court properly denied defendant's motion to dismiss.

Defendant contends that the circuit court erred in admitting, over defendant's objection, certain testimony of Dr. Henry Lattinville, a neurologist, who examined plaintiff on June 1, 1964, and September 12, 1964. Since defendant also contends that the verdict and judgment are excessive, it is necessary to review the medical evidence.

Dr. W. S. Taylor, a physician who lives and practices medicine at Cookeville, Tennessee, testified by deposition that he had treated plaintiff and his family since 1956. Dr. Taylor saw plaintiff on March 13, 1963, in the emergency room at the Cookeville Hospital. At that time plaintiff told him he had been injured while working about 3 weeks earlier. Plaintiff complained of pain in the low back, there was tenderness on palpation and some surrounding muscle spasm. The doctor prescribed rest, heat locally and analgesics. Between March 13 and April 9, 1963, Dr. Taylor saw plaintiff five times; on April 9, 1963, his back was worse and pain was radiating down

his left leg. On May 20, 1963, Dr. Taylor referred plaintiff to a physician at Nashville. He had not treated plaintiff for any back trouble prior to March 13, 1963, and was of the opinion that the condition from which plaintiff was suffering was caused by the trauma which plaintiff described as having occurred while he was working. He also testified that he had not followed plaintiff's case sufficiently since referring him to another physician to have an opinion as to whether plaintiff suffered any permanent disability.

Dr. Robert J. Trautman, Chief of Surgery at the United States Public Health Service Hospital at Memphis testified by deposition that plaintiff was a patient at the Public Health Service Hospital from April 15 to May 16, 1963, that the hospital record showed a diagnosis of lumbo sacral strain and redundant prepuce. The latter condition was corrected by circumcision and no other surgery was performed on plaintiff. He identified records and X rays and described generally the treatment given plaintiff consisting of prescribing aspirin and demerol for pain, physiotherapy, traction and diathermy.

Dr. Eugene M. Regen testified by deposition that he is an orthopedic surgeon and enumerated his qualifications. He described the examination made of plaintiff and stated that his diagnosis was that plaintiff "had an injury to his back or something in his back that was causing compression of a nerve root that comes out from the spinal cord in the lower portion." Plaintiff was put on a series of exercises designed to relieve the nerve pressure. These were not successful and he decided to operate, notwithstanding a negative myelogram report, because he felt the clinical findings were sufficient to indicate pressure on a nerve root in the lower back. Before surgery, he found a wasting or atrophy in the muscles of the left leg.

Dr. Regen operated on plaintiff on July 15, 1963, at Vanderbilt Medical Center Hospital. He performed a

54

laminectomy and a facetectomy, removing the facets on the left side, and the lamina, at the fourth lumbar joint.

Dr. Regen further testified that plaintiff was admitted to the hospital on June 22, 1963, and discharged on July 25, 1963, that he examined plaintiff on August 22, October 1, December 12, 1963, February 13 and April 16, 1964, and on the date on which the deposition was taken May 6, 1964, plaintiff was still under his care. He stated that since the operation plaintiff had been given progressive exercises to strengthen his muscles and maintain mobility of his back, that he was pleased with plaintiff's progress, his posture and gait are improved, that he complains of less pain and he felt plaintiff's condition would further improve.

On April 16, 1964, Dr. Regen did not think plaintiff was able to return to employment as a deckhand because he still suffered pain, and a back injured in the manner in which plaintiff's was injured, is left with some degree of weakness. As to whether plaintiff could ever return to heavy work, the doctor hoped so, but could not state that he would. He thought plaintiff would continue to improve, but his back could not ever be quite as strong as before. In comparing X rays made in the spring of 1964 with X rays made prior to surgery, the doctor recognized a slight, angular deformity of the joint which was operated on. This indicated some lack of stability.

The doctor further stated that although he could not say that the condition as of that time was permanent, some degree of trouble is permanent and only time can tell where the degree will end, that people suffering from this type of injury have periods of exacerbation and remission which vary with activities and weather changes.

In addition to the above described testimony, plaintiff offered the deposition of Dr. Regen, taken by defendant on August 20, 1964. The doctor testified that he had examined plaintiff on June 18, 1964, at which time plaintiff's condition was improved, although he still com-

plained of pain in his left leg and back. He prescribed a continuation of muscle strengthening exercises, and was of the opinion that plaintiff was capable of performing very light work. He felt plaintiff could not do any work which required heavy lifting or excessive use of his legs, back, shoulders or arms in handling a load, and to do such work would risk the recurrence of trouble with his back.

Dr. Henry Lattinville, a neurological surgeon, testified that he performed a neurological examination of plaintiff and examined a series of X rays which had been admitted in evidence, without objection. In comparing X rays taken in October 1963 and April 1964, he described an increased narrowing of the space between L–5 and S–1 on the left side, and stated that it indicated that the big nerve root in that region is constantly being irritated, that the back is unstable, the condition is not static, but progressive and it was his opinion, based on reasonable medical certainty that it would become worse as plaintiff becomes older, and could become so severe as to require fusion. The doctor defined subjective and objective symptoms, and in response to questions specifically limiting his opinions to his objective findings, he testified that in his opinion, plaintiff had nerve root irritation at the L–5 S–1 interspace on the left side, and was industrially unemployable.

Defendant contends that because Dr. Lattinville had taken a history from plaintiff, and because the accuracy of some of the tests made during his examinations of plaintiff are dependent on the patient's veracity, the court erred in permitting the witness to express an opinion. The rule that the opinion of an examining physician may not be based on subjective symptoms has been clearly established and repeatedly stated. Jensen v. Elgin, J. & E. Ry. Co., 24 Ill2d 383, 182 NE2d 211. This rule, however, does not preclude an examining physician from testifying to an opinion based solely on objective symp-

toms, even though he may be aware of subjective symptoms. It is clear from this record that in the questions propounded to Dr. Lattinville, he was specifically asked whether, based on his examination, and limiting his answers solely to his objective findings, he had an opinion as to the condition from which plaintiff suffered, and its permanency. Since it is clear from the testimony that his opinions were based on his own examinations and his objective findings, and not on any subjective symptoms or statements made by plaintiff, the circuit court did not err in admitting the testimony. Deckert v. Chicago & E. I. R. Co., 4 Ill App2d 483, 124 NE2d 372.

■ Defendant contends that the verdict and judgment are excessive, and the circuit court erred in its refusal either to order a substantial remittitur or grant a new trial. Actuarial evidence and testimony in the record show that at the time of his injury plaintiff had a life expectancy of 456 months and a work expectancy of 371 months. At the time of the injury plaintiff was earning $430 per month and at the time of trial had lost wages of approximately $6400. He had suffered pain, had undergone surgery and had not, up to the time of trial, done any work of any kind. From the testimony of Drs. Regen and Lattinville it is clear that plaintiff was not in condition to do any but the lightest type of work. The testimony shows that as a deckhand-tankerman plaintiff was required to help make up and break up tows, handle and carry lines, hoses, and other equipment weighing up to 110 pounds. With a seventh grade education the jury may well have concluded that light work would not be too readily available to him.

■ Plaintiff contends that this court cannot order a new trial in a case based on the Federal Employers' Liability Act or Jones Act on the ground that the judgment is excessive, but we need not reach that issue in this case. The assessment of damages is preeminently a jury function, Braswell v. New York, C. & St. L. R. Co.,

60 Ill App2d 120, 208 NE2d 358, and we are not prepared to say, on the basis of the record before us, that the judgment is excessive.

For the reasons set forth, the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.