THOMAS A. McGOWAN, Plaintiff-Appellee, *v.* MARIE BLOM McGOWAN, Defendant-Appellant.

(Nos. 57707, 57759 cons.;

First District (2nd Division)—November 20, 1973.

Rothschild, Barry and Myers, of Chicago, (Jerome M. Devane, of counsel,) for appellant.

Norman E. Zimmerman, of Chicago, (Joseph J. Ticktin, of counsel,) for appellee.

ON A PETITION FOR REHEARING

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant-wife appeals from a judgment of divorce, contending that the evidence is insufficient to support the finding of mental cruelty upon which the judgment is based.

914

The parties were married on April 26, 1947. No children were born to or adopted by them during the marriage. On August 7, 1970, plaintiff-husband filed a complaint for divorce alleging mental cruelty and constructive desertion on the part of defendant. On August 21, 1970, defendant filed a complaint for separate maintenance. The two actions were consolidated by order of the trial court. After a hearing, the trial court dismissed defendant's complaint for separate maintenance and granted plaintiff a divorce on the ground of mental cruelty.

■■ The judgment should not be disturbed unless it is against the manifest weight of the evidence. (*Hayes v. Hayes*, 117 Ill.App.2d 211, 254 N.E.2d 288.) However, it is necessary that it be supported by positive evidence establishing the statutory ground of mental cruelty. Mental cruelty has been defined by our courts as conduct which causes embarrassment, humiliation and anguish so as to render life miserable and unendurable or to cause a spouse's life, person or health to become endangered. *Stanard v. Stanard*, 108 Ill.App.2d 240, 247 N.E.2d 438; *Howison v. Howison*, 128 Ill.App.2d 377, 262 N.E.2d 1.

In support of his allegation, plaintiff testified at trial that defendant's attitude toward him had been "cold" since approximately 1960. Defendant would not speak to plaintiff for periods of time (the longest of which was 3 to 4 days), and indicated to plaintiff that he was "less than a man" by constantly criticizing his actions and casting aspersions upon his intelligence. Defendant refused to engage in sexual intercourse with plaintiff on many occasions; told plaintiff that the reason they had no children was completely his fault; and accused plaintiff of not wanting children. Defendant refused to accompany plaintiff when he visited his friends. Plaintiff also stated that defendant would visit plaintiff's place of business and ignore his employees and "persons important" to plaintiff in his business. Plaintiff stated that he talked to defendant about their marital situation many times, and defendant was aware that her conduct was causing plaintiff to become distraught.

Plaintiff further testified that in early summer or late spring of 1967, defendant left their apartment and moved into a hotel for approximately one month. Defendant returned to the apartment, and shortly thereafter, moved out again. Plaintiff testified that he never asked defendant to leave and always remained open to a reconciliation. In October, 1967, defendant returned again, told plaintiff that the marriage was over and asked him to leave the marital domicile. Plaintiff rented an apartment which was under construction, but he never moved into that apartment. Thereafter plaintiff and defendant occupied separate bedrooms. In February, 1968, defendant again told plaintiff to leave, and said that she wanted a

divorce and one-half of plaintiff's income for the rest of his life. Plaintiff then moved out of their apartment.

In September, 1966, plaintiff began to undergo treatment for a skin rash which he believed was caused by a nervous condition, and in 1967 he experienced a weight loss which he attributed to marital discord. After plaintiff left the marital domicile in February, 1968, his skin rash improved, and he also began to gain weight.

On cross-examination plaintiff stated that in April, 1968, after he had moved out, he returned to the apartment for a weekend during which time plaintiff and defendant engaged in sexual intercourse. In addition, plaintiff described himself as a "medium" drinker, and admitted that he once punched his fist through the bathroom door of their apartment after "six months of aggravation."

Defendant's testimony conflicted with and refuted portions of plaintiff's testimony. Defendant testified that she had always been a loving wife, never had embarrassed plaintiff and never had impugned his intelligence. She never refused to help him in business affairs or socially, and only two or three times since 1960 had she refused to accompany plaintiff socially. She left the apartment in 1967 at plaintiff's insistence and returned in September, 1967, at his request. In October, 1967, plaintiff told her he was in love with another woman. Defendant stated that she never wanted a divorce, and related an incident in October, 1967, when plaintiff acted violently toward her.

On cross-examination defendant stated that three pregnancies had been naturally aborted in 1954, 1957, and 1967, and that she did not tell plaintiff of these abortions until after the last one had occurred in September, 1967. She stated that she did not tell plaintiff earlier because she did not want to alarm him. Defendant admitted that plaintiff had become very thin, and that a rash appeared on his body prior to their final separation in February, 1968.

The only other witness was a long-time friend of defendant who testified that he never observed defendant "abnormally" criticizing or belittling plaintiff. He also testified that in the summer of 1967, plaintiff told him that he wanted a trial separation because he and defendant had been fighting, and because defendant was "frigid" toward him.

■■ We recognize the long-established principle that it is the duty of the state to guard the marital relationship, and that it should not be lightly terminated. A plaintiff is not excused from proving the statutory grounds for divorce by competent evidence, even though the court might conclude that the marriage was dead. (*Farnbach v. Farnbach*, 1 Ill.App.3d 74, 273 N.E.2d 12.) However, the ultimate test of mental

cruelty is the effect defendant's conduct has upon plaintiff and the marriage. (*Howison v. Howison, supra.*) From the record in the present case, we conclude that the evidence supported plaintiff's allegations and established the statutory grounds of mental cruelty. The record indicates more than mere "bickering" between the parties. Plaintiff testified, without contradiction, of a lack of communication, frigidity in their intimate relationships, disparaging comments regarding his desire and ability to have children, and defendant's jealousy of another woman. Nowhere in the record, other than vague reference to plaintiff's excessive drinking and affair with another woman, does defendant refer to specific conduct on the part of plaintiff which provoked defendant's conduct. Defendant corroborated plaintiff's testimony as to his loss of weight and skin rash. Plaintiff attributed this condition to the nervous disorder caused by defendant's conduct.

■■ Therefore, we will not substitute our judgment for that of the trial court. The conflicts which exist in the evidence are to be resolved by the trier of fact. We conclude that the judgment appealed from is not contrary to the manifest weight of the evidence. The judgment is affirmed.

Affirmed.

LEIGHTON and HAYES, JJ., concur.