GEORGEANN FARAH, Plaintiff-Appellee, *v.* ELIE FARAH, Defendant-Appellant.

(No. 59651;

First District (1st Division)—January 6, 1975.

482

484

John C. Ambrose and Philip J. Schmidt, both of Chicago, for appellant.

Rinella & Rinella, of Chicago (Samuel A. Rinella and Stuart N. Litwin, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Georgeann Farah (plaintiff), wife of Elie Farah (defendant), brought suit for divorce upon grounds of physical and mental cruelty. After hearing evidence, the trial court entered a judgment granting plaintiff a divorce on the ground of physical cruelty and awarding her custody of their child, Georgeann D. Farah, presently about 3 years old. Defendant has appealed.

For better understanding of the contentions of the parties, we will first note certain factual details. The facts appear primarily from plaintiff's own testimony. Defendant appeared at trial only by his attorney. Plaintiff was called as an adverse witness by defendant and the only other witness for defendant was his brother. Plaintiff is a citizen of the United States. Defendant is a citizen of Lebanon. The parties were married in Cook County, Illinois, on January 12, 1971. For some time, defendant, a civil engineer, was employed in Montreal, Canada, and the parties lived there for about 7 months. The child was born in Montreal. In September of 1971, the family took up residence in Chicago in a furnished apartment which they leased. Defendant was employed in Chicago. The parties made an effort to buy a home in a suburban area of Chicago but did not do so for financial reasons.

On the issue of physical cruelty, plaintiff testified that about the middle of January 1972, in their apartment in Chicago, defendant kicked her and struck her with his fists on the face, shoulders, arms and back, all without cause or provocation. In early March of 1972, at the same place, after an argument, also without any reason, he struck her with his fists on the arms and back. Plaintiff also testified that defendant thus caused her pain and suffering and that he threatened her life. Only the child was present on these occasions.

Defendant's brother testified that he is a practicing physician in Illinois. The parties were his house guests in Chicago for five weeks before they moved to their own apartment. Then he visited them often in their home. Plaintiff never told him that defendant had struck her. When asked by counsel for defendant if he had ever seen marks or bruises about her body, he replied that he could not see anything abnormal and "I didn't look for bruises."

In May of 1972, parents and child left on an extended vacation during which they visited Europe and Lebanon. Plaintiff's parents then lived in Greenwich, Connecticut. In June of 1972, the parties returned there. Defendant made a trip from Greenwich to Chicago where he remained for 4 days. He was employed in Chicago until July 4, 1972. Plaintiff testified that during these months of May, June and July 1972, she had no home in Lebanon or in Greenwich but that her home continued to be in Chicago.

On cross-examination, plaintiff testified that she and her husband "lived together as man and wife" while they were on their vacation commencing in May of 1972. This situation continued until July of 1972.

Plaintiff also testified on direct examination that upon their return to Greenwich defendant told her that he would take the child to visit his sister who also lived in Greenwich. Instead, he and the child failed to return. Plaintiff did not know where defendant and the child were. She attempted, unsuccessfully, to find them by going to Chicago and making an inquiry at defendant's place of employment. In a short time she received a cable sent by defendant from Lebanon, expressing regret at her "decision not to join us." During that same month of July 1972, plaintiff was advised that defendant had made available to her a prepaid ticket for her air travel to Lebanon. However, plaintiff never took possession of this ticket.

Despite several attempts by plaintiff, defendant refused to permit her to see the child. She testified that on one occasion defendant told her on the telephone that she should "finish with all the lawyers" because if any lawyer was involved she would never see the baby again. Plaintiff and her American attorney went to Lebanon during August 1972. They

attempted to obtain custody of the child but could not do so. Plaintiff testified that defendant then refused to permit her to see the child. She had no knowledge of the exact whereabouts of her child from July 4, 1972, until January of 1973. Plaintiff filed suit in a civil court in Beirut, Lebanon, in which she sought divorce on the ground of cruelty, custody of the child and alimony. Apparently that suit remains pending and undetermined in the Lebanese court.

In connection with the instant proceedings, it should be noted that defendant was personally served with summons at his place of employment at Kano, Nigeria. Defendant filed a special appearance questioning the jurisdiction of the court over his person and a motion to quash service of summons. After a hearing, this motion was denied. Thereupon defendant filed a motion to dismiss the action on the ground of the pending case in Lebanon. (Ill. Rev. Stat. 1973, ch. 110, par. 48(1)(c).) After a hearing, this motion was denied. Defendant filed an answer and the cause proceeded to trial.

In this court, defendant contends that the trial court lacked jurisdiction over the subject matter and jurisdiction over his person; the proof was not adequate to support the divorce on the ground of physical cruelty because the testimony of plaintiff was uncorroborated and the findings of the trial court were thus manifestly against the weight of the evidence; plaintiff's action was barred by condonation as appears from her own testimony so that the court erred in denying defendant an opportunity to amend his answer to allege the affirmative defense of condonation; pendency of the prior action in Lebanon should be respected by this court which should refuse to proceed further on principles of comity; and the doctrine of *forum non conveniens* is applicable here so that the court should have dismissed the cause on that ground. Plaintiff contends that the court had proper jurisdiction over the subject matter and over the person of defendant; the evidence was sufficient to support the finding of physical cruelty; there was no evidence of condonation; section 48(1)(c) of the Civil Practice Act has no application to other actions pending in foreign countries and the principles of *forum non conveniens* should not be applied here.

██ The first points raised by defendant pertain to the jurisdiction of the trial court both as to subject matter and the person of the defendant. It is quite correct, as defendant asserts, that the trial court could not proceed without jurisdiction over the subject matter and his person. The Illinois Constitution of 1970 vested "* * * original jurisdiction of all justiciable matters * * *" in the circuit courts except for certain ex-

ceptions not pertinent here. (Ill. Const. (1970), art. VI, § 9.) This court recently defined jurisdiction of the subject matter as "* * * the power of a particular court to hear the type of case that is then before it." (*Davis v. Davis,* 9 Ill.App.3d 922, 929, 293 N.E.2d 399, citing *Faris v. Faris,* 35 Ill.2d 305, 220 N.E.2d 210.) Under established legal principles, "* * * the jurisdiction of courts of equity to hear and determine divorce cases is conferred only by statute" and, in turn, "* * * such jurisdiction depends upon the grant of the statute and not upon general equity powers." *Smith v. Johnson,* 321 Ill. 134, 140, 151 N.E. 550.

■■ In Illinois the pertinent statute pertaining to divorce provides that "[t]he circuit courts of the respective counties shall have jurisdiction in all cases of divorce and alimony allowed by this act." (Ill. Rev. Stat. 1973, ch. 40, par. 5.) The statute further requires that every plaintiff reside in the State of Illinois "* * * one whole year next before filing his or her complaint, unless the offense or injury complained of was committed within this State." (Ill. Rev. Stat. 1973, ch. 40, par. 3.) Immediately following this language is a proviso that even where the offense or injury complained of was committed within this State, plaintiff is not entitled to a divorce "* * * unless the plaintiff or the defendant shall have resided in this State for a continuous period of at least six months next before filing his or her complaint." (Ill. Rev. Stat. 1973, ch. 40, par. 3.) This statutory requirement is of the utmost importance because it has been repeatedly held that "[t]he plaintiff's residence in a divorce case for the requisite period is necessary to confer on the court jurisdiction of his case." *Davis v. Davis,* 9 Ill.App.3d 922, 929, 293 N.E.2d 399, citing *McFarlin v. McFarlin,* 384 Ill. 428, 51 N.E.2d 520; also *People ex rel. Bradley v. McAuliffe,* 24 Ill.2d 75, 80, 81, 179 N.E.2d 616.

Thus, the clear issue regarding the juridiction of the subject matter is whether plaintiff or defendant resided in Illinois for the necessary 6-month period prior to January 11, 1973, when plaintiff's complaint was filed in the circuit court. One of the leading Illinois cases on the issue of defining the word "residence" as used in these statutory grants of authority is *Berlingieri v. Berlingieri,* 372 Ill. 60, 22 N.E.2d 675. The supreme court carefully pointed out that residence and domicile are not synonymous. The word "domicile" is applicable in many situations with particular reference to taxation. On the contrary, the term "residence" as used in this statute "* * * was intended to have its ordinary and commonly accepted meaning." (372 Ill. 60, 62.) Residence does not consist simply of physical presence in any particular locality. It is primarily a matter of intent. "Of paramount importance in determining whether a given place is or is not one's residence is the intent of that person to live

there as his permanent home." (*Garrison v. Garrison*, 107 Ill.App.2d 311, 314, 246 N.E.2d 9.) The issue of existence of intent is purely a question which must be determined initially by the trier of fact in the trial court with due consideration for all of the evidence and circumstances of the case. *Bateman v. Bateman*, 337 Ill.App. 7, 13, 85 N.E.2d 196, leave to appeal denied, 403 Ill. 628.

■■ In the case before us, the parties contracted their marriage in Illinois in January of 1971. They left Illinois temporarily while defendant was employed in Canada. In September of 1971 they returned to Chicago where they leased an apartment. They made an effort to purchase a home near Chicago. Defendant was employed in Chicago. Furthermore, there is direct evidence in the record that plaintiff's home continued to be in Chicago continuously until July of 1972. The record is bare of evidence to the contrary. It follows that the finding that the parties were both residents of the State of Illinois when the alleged acts of physical cruelty were committed in Chicago, in January and March of 1972 is in accordance with the evidence.

■■ The next issue is whether plaintiff abandoned her Illinois residence after July of 1972 and prior to the filing of her suit. It is true that plaintiff did leave Chicago for various reasons during this period of time. She did journey to Lebanon with her lawyer in an attempt to assert her rights to visitation of the child, but the mere fact, even of a lengthy absence under these circumstances, does not constitute abandonment. (See *Cohn v. Cohn*, 327 Ill.App. 22, 24, 63 N.E.2d 618.) This court dealt with a rather similar question in *Davis v. Davis*, 9 Ill.App.3d 922, 293 N.E.2d 399. We pointed out there that the case was different from a situation involving a transient person who entered Illinois originally for the sole purpose of obtaining a divorce. We held that the finding of residence by the trial court would not be reversed unless it was against the manifest weight of the evidence. In the case before us, the evidence fully justifies the finding of the trial court that the residence of plaintiff was in Illinois so that the circuit court had jurisdiction of the subject matter. Since his finding of the trial court is not manifestly against the weight of the evidence, we may not disturb it. *Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.

As regards the issue of jurisdiction over the person of defendant, when this suit was filed he had left the United States. Plaintiff attempted to obtain jurisdiction over him by publication and mailing of notices to him in care of three members of his family. In addition, plaintiff obtained an order of court authorizing personal service of summons by a process server. This was predicated upon section 17(1)(e) of the Civil Practice

Act (Ill. Rev. Stat. 1973, ch. 110, par. 17(1)(e)) which provides for submission of the person to the jurisdiction of the courts of Illinois:

> "With respect to actions of divorce and separate maintenance, the maintenance in this State of a matrimonial domicile at the time the cause of action arose or the commission in this State of any act giving rise to the cause of action."

Summons and a copy of the complaint were actually served upon defendant personally in Kano, Nigeria. Defendant filed a special appearance in the cause and also communicated by mail with the clerk of the circuit court. The issue is, under the above statute, whether the parties had "a matrimonial domicile at the time the cause of action arose" or whether "any act giving rise to the cause of action" was committed in Illinois.

■■ There is a scarcity of legal authority regarding the interpretation of this comparatively new section of the statute. (See Historical and Practice Notes, Ill. Ann. Stat., ch. 110, par. 17(1)(e), at page 177, (Smith-Hurd 1968), citing 16 DePaul L. Rev. 45.) *Hawes v. Hawes,* 130 Ill.App.2d 546, 263 N.E.2d 625, is not helpful. There, the court readily found that it did not have jurisdiction over the person of the defendant. There was no matrimonial domicile in Illinois, defendant never resided here and no material acts were committed within Illinois. (See 130 Ill.App.2d 546, 548.) In the case before us the clear language of the enactment authorizes and validates service of process on defendant outside of Illinois, both by virtue of maintenance of the matrimonial domicile in this State at the time the cause of action arose and also the commission of acts of cruelty within the State. This record shows that the parties were married in Illinois. Their matrimonial domicile was established in Illinois as both became residents of this State and remained here when the cause of action arose. Furthermore, plaintiff alleged in her complaint, and the proof supports the allegation, that acts of physical cruelty were committed upon her person by defendant in January and March of 1972 at their home in the city of Chicago. It follows that the trial court had jurisdiction over the person of defendant.

Defendant next raises three points regarding the evidence. He contends that the judgment should not have been granted upon uncorroborated testimony; the proof is insufficient to show physical cruelty which is limited to acts of violence, bodily harm or suffering or acts which endanger life or limb; and, finally, the findings of the trial court concerning cruelty are against the manifest weight of the evidence.

■■ The need for corroboration in proof of grounds for divorce is established by section 9 of the Divorce Act. (Ill. Rev. Stat. 1973, ch. 40, par.

9.) The statute provides that in cases where the complaint is taken as confessed, the cause of divorce must be fully proven "* * * by reliable witnesses." This language has been used in the statutes of Illinois for many years and it has consistently been interpreted as requiring that grounds of divorce must be proved by more than one witness in cases where the complaint is taken as confessed. (*Kline v. Kline,* 104 Ill.App. 274.) This has been the settled law of Illinois for generations. However, the statute has no application to cases in which the defendant appears in court and the issue is contested. By its express terms it applies only to cases in which "the complaint is taken as confessed." [1]

■■ One of the later authorities illustrating this point and holding that "* * * corroboration is not necessary in a contested divorce proceeding" is *Bilsky v. Bilsky,* 18 Ill.App.3d 329, 333, 309 N.E.2d 697. (See also *Surratt v. Surratt,* 12 Ill.2d 21, 23, 145 N.E.2d 594.) The issue here, as in other cases, is whether the evidence of plaintiff is sufficiently credible to prove the charges by a preponderance of the evidence. Therefore, in this type of situation where the grounds for divorce are contested, "[w]hen a determination of the facts depends upon the weight and credibility to be given to the testimony of witnesses, a reviewing court will not reverse the finding of the trial court unless the finding is against the manifest weight of the evidence." *Varap v. Varap,* 76 Ill.App.2d 402, 411, 222 N.E.2d 77.

As to the issue of the precise type of conduct necessary to bring any case within the statutory definition of extreme and repeated cruelty, the law of Illinois is clear and definite to the effect that (*Surratt v. Surratt,* 12 Ill.2d 21, 24, 145 N.E.2d 594):

> "Each case must be considered upon its own facts, including the conduct of the parties before and at the time, their respective physical and mental conditions, and other circumstances relevant to the probable effect of the acts."

■■ It is correct that the policy of Illinois requires that a divorce should not be treated lightly and a marriage dissolved without due consideration. (*McGowan v. McGowan,* 15 Ill.App.3d 913, 915, 305 N.E.2d 261.) Physical cruelty may not be built upon trifling and insignificant incidents. On the other hand, it need not be shown that the physical cruelty was so aggravated as to gravely endanger the life or limb of the spouse upon whom it has been inflicted. "Two acts of physical violence resulting in pain and bodily harm, committed on separate occasions, are sufficient grounds for divorce." (*Kovack v. Kovack,* 131 Ill.App.2d 382, 384, 268 N.E.2d 258, cited in *Mills v. Mills,* 13 Ill.App.3d 288, 289, 300 N.E.2d

---

[1] Note the amendment effective July 1, 1974, providing instead that where the "complaint is taken as confessed" the cause of divorce must be "fully proven."

842.) In the case at bar, plaintiff testified to an occasion upon which defendant kicked and struck her with his fists on the face, on the shoulders, arms and back. She testified to another occasion some 3 months later when defendant again struck her with his fists on the arms and back. She testified that both of these incidents were without reason or provocation and that defendant caused her pain and suffering and threatened her life. Plaintiff was not impeached in any degree. Her direct and positive testimony in this regard stands in the record without contradiction. The only witness called by defendant was his own brother whose testimony on this point was indirect and actually not probative.

■■ We find that the result reached by the trial judge is fully supported by the record and it is not contrary to the manifest weight of the evidence. As regards the merits of the grounds for divorce, the judgment should be affirmed.

Defendant next raises four points on the issue of condonation. He contends that condonation is an absolute bar to a divorce; defendant had the right to amend the pleadings to conform to the proof; plaintiff's own testimony showed she had condoned the charges of cruelty and the trial court abused its discretion in not allowing defendant to amend his pleadings by adding the defense of condonation.

Defendant's first contention is theoretically valid. Condonation is well defined in many cases as "* * * forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness." (*Ollman v. Ollman*, 396 Ill. 176, 181, 71 N.E.2d 50.) However, the law is equally well established that cohabitation is not necessarily equivalent to condonation. The sole fact that the husband and wife continued to live together and continued sexual relations is not, in and of itself sufficient proof of condonation. *Deahl v. Deahl*, 13 Ill.App.3d 150, 157, 300 N.E.2d 497, and authorities therein cited.

■■ The basic issue to be decided here is whether there was sufficient proof of condonation. It was the duty of defendant to prove plaintiff's intent in this regard by a preponderance of the evidence. (See *Deahl*, 13 Ill.App.3d 150, 157, 300 N.E.2d 497.) The proof here shows simply that the parties cohabited after the last act of cruelty, which took place in March of 1972. This appears from plaintiff's own testimony. However, defendant offered no evidence on this issue. As analyzed in view of the authorities above cited, this record presents proof simply of cohabitation with no additional evidence. There is no proof of full and free forgiveness and no proof whatsoever of any intention by plaintiff so to do. (*Rasgaitis v. Rasgaitis*, 347 Ill.App. 477, 480, 481, 107 N.E.2d 273.) We find this evidence insufficient to prove condonation.

Therefore, it is unnecessary for us to decide the contentions of defendant pertaining to his right to amend his answer. (Note *McGaughy v. McGaughy,* 410 Ill. 596, 600, 102 N.E.2d 806.) Since the proof was completely lacking, filing of an amendment to defendant's answer would still leave him in the position of having "* * * allegations without proof in support * * *" and would have been a futile gesture. See *Burke v. Burke,* 12 Ill.2d 483, 487, 147 N.E.2d 373.

As above shown, defendant's motion to dismiss the cause, because of the pendency of a similar action between the same parties in the courts of Lebanon, was denied before trial. It is agreed that such proceedings were instituted by plaintiff in Lebanon. To her knowledge, the foreign case remains pending.

Defendant's motion was based upon section 48(1)(c) of the Civil Practice Act which provides for a motion to dismiss on the ground "[t]hat there is another action pending between the same parties for the same cause." (Ill. Rev. Stat. 1973, ch. 110, par. 48(1)(c).) Despite the provision in this very section, that pleading over after denial of such motion was not a waiver of any error in such denial, defendant reinstated this defense in his answer. The matter was argued again before the trial judge and the judgment for divorce found this and other affirmative defenses of defendant to have no merit.

■■ Defendant has cited no authority in support of his contention that this court should recognize and respect the pendency of a prior divorce suit in a foreign country on the basis of comity. Defendant seeks to argue certain statutes which he states in his brief exist in Lebanon and which have a bearing on this issue. However, our courts have consistently held that courts of Illinois will take judicial notice of the laws of sister states and of the United States but that "* * * the laws of foreign countries cannot be judicially noticed by Illinois courts." (*Atwood Vacuum Machine Co. v. Continental Casualty Co.,* 107 Ill.App.2d 248, 262, 246 N.E.2d 882.) This is in accordance with the clear provisions of the statute which provide that laws of foreign countries are not subject to judicial notice but their existence is an issue for decision by the court. Ill. Rev. Stat. 1973, ch. 51, par. 48(k).

The only other authority cited by defendant is *Hilton v. Guyot,* 159 U.S. 113, 40 L.Ed. 95, 16 S.Ct. 139, decided in 1895. *Hilton* occupies more than 100 pages of the volume. The substance of the opinion is that, in the absence of statute or treaty, principles of comity do not require the courts of the United States to enforce a judgment entered in the courts of France. Four justices dissented on the theory that this was a matter of *res judicata* concerning which the court had no discretion. Note the analysis of *Hilton* in *Clubb v. Clubb,* 402 Ill. 390, 395, 84 N.E.2d 366.

In more modern times, we have many authorities in the State of Illinois which hold that, "The full faith and credit clause of the Federal Constitution (Art. IV, Sec. 1, U.S. Constitution) does not require an Illinois court to recognize or enforce the decree of a foreign country." (*Hager v. Hager,* 1 Ill.App.3d 1047, 1050, 274 N.E.2d 157.) *Hager* cites a number of authorities in support of this proposition including the exhaustive opinion of the Supreme Court of Illinois in *Clubb.*

However, these authorities are not directly applicable here. We are not dealing with a judgment entered by a foreign court but simply with the pendency of another suit. Our search did not disclose any decision by an Illinois court deciding this exact problem. Plaintiff has directed our attention to *Skolnick v. Martin,* 32 Ill.2d 55, 203 N.E.2d 428, *cert. denied,* 381 U.S. 926. That case holds simply that section 48(1)(c) of the Civil Practice Act does apply to other actions pending in the Federal courts. *Skolnick* has no application to the issue before us concerning mere pendency of proceedings in the courts of a foreign country.

The question was considered in *Pesquera Del Pacifico v. Superior Court* (1949), 89 Cal. App. 2d 738, 201 P.2d 553. The California Code of Civil Procedure provides that a defendant may object to the prior pleading on the ground that "there is another action pending between the parties on the same cause of action." (Cal. Ann. Code of Civil Procedure, § 430.10(c) (Deering 1972).) *Pesquera* involved an action for writ of prohibition seeking to restrain an action in the California courts on the theory that another action involving the same parties and the same subject matter was pending before the courts of Mexico. The California court denied the writ on the theory that the pendency of the action in the foreign country was not a bar to the California proceedings. The court held that it had power in its discretion to withhold further proceedings in the case if such action was warranted by the circumstances but that such abatement of the California proceedings was not a matter of right.

This result seems supported by logic and analogy. If a final judgment entered by a foreign court need not be enforced by the courts of Illinois under constitutional principles of full faith and credit, then it should necessarily follow *a fortiori* that the mere pendency of a prior action in the court of a foreign country should not constitute a bar to further proceedings before this court.

■■ In the case before us, two separate trial judges have heard arguments on this problem and have exercised their discretion by directing that the courts of Illinois proceed to final judgment. The trial judge in particular heard the witnesses and the arguments of counsel and arrived at the same result. We have nothing before us to indicate the laws of

Lebanon and what effect, if any, such laws would have upon this entire situation. There is no evidence of any pertinent treaty between the United States and Lebanon. We find nothing in this record which would cause us to hold that two judges of the circuit court abused their discretion. On the contrary, the argument might well be advanced that plaintiff was impelled to institute the proceedings in Lebanon in an effort to obtain custody or even visitation rights concerning the child. Furthermore, since the filing of the Lebanese case neither party seems to have acted to obtain a ruling by that court. The defendant's motion to dismiss was properly denied.

■■ We may add that defendant's 12th contention raises an issue of "equitable estoppel." The theory is that plaintiff filed, and participated in, the Lebanese proceedings and that defendant, having engaged counsel and participated in the suit, had changed his position so that plaintiff should be estopped from proceeding with the Illinois case. These statements are not warranted by the record. From the evidence before us, it could be argued with greater force that plaintiff was coerced into filing proceedings in Lebanon because defendant had taken custody of their child by a subterfuge and had brought the child to that country. Plaintiff was actually unable even to visit the child until after she had taken affirmative action by instituting the foreign proceedings. In addition, we find no legal authority of any kind in support of defendant's position. He cites two cases which are both completely inapplicable here. *In re Estate of Owens,* 7 Ill.App.2d 428, 129 N.E.2d 573; *Schulz v. Schulz,* 38 Ill.App.2d 445, 187 N.E.2d 540, decision published in abstract only.

■■ Defendant's final contention, *forum non conveniens,* may be shortly disposed of. Defendant made no motion to dismiss the case on that ground but merely stated in affirmative defenses appended to his answer that he was "placed in the extremely prejudiced and costly position of trying to defend two law suits at opposite ends of the world." It is extremely doubtful if this statement actually raises the point of *forum non conveniens.* Furthermore, the proper method of raising this issue would be by preliminary motion. The granting or denying of a motion to dismiss on the ground of *forum non conveniens* is a matter which requires the exercise of discretion by the trial court. (*Fender v. St. Louis Southwestern Ry. Co.,* 49 Ill.2d 1, 4, 273 N.E.2d 353.) When trial has commenced the proper and feasible time for exercise of this discretion has already passed.

However, quite apart from this technical consideration, it has been specifically held "* * * that the doctrine of forum non conveniens is not applicable to actions arising within the state of Illinois * * *."

(*Emerton v. Canal Barge Co., Inc.*, 70 Ill.App.2d 49, 53, 216 N.E.2d 457, leave to appeal denied, 34 Ill.2d 629.) This court arrived at that result by virtue of a statement made by the supreme court in *Cotton v. Louisville & Nashville R.R. Co.*, 14 Ill.2d 144, 159, 152 N.E.2d 385, that the doctrine is available "* * * as a ground for refusal by a court to exercise jurisdiction over a cause of action arising beyond the State's boundaries."

■■ The wisdom of this ruling is readily apparent in the case before us. These parties were married in Illinois and resided here for some time. The acts of cruelty depended upon by plaintiff were committed within the State of Illinois. The statutes of Illinois vest our courts with jurisdiction to hear the cause. (Ill. Rev. Stat. 1973, ch. 40, par. 3.) No other forum within the United States would have jurisdiction to grant plaintiff relief in this cause. No other state presents a forum which would better "* * * serve the convenience of the parties and the ends of justice." *Lonergan v. Crucible Steel Co.*, 37 Ill.2d 599, 605, 229 N.E.2d 536.

After careful consideration of each and all of the issues raised by defendant, we conclude that they are without merit and that this record is free from reversible error. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.