Joan N. Rafferty, Appellant, v. John B. Rafferty, Appellee.

Gen. No. 44,644.

278

Opinion filed April 4, 1949.    Released for publication May 17, 1949.

SARSFIELD COLLINS, of Chicago, for appellant.

KELLY & CRAWFORD, of Chicago, for appellee.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff on March 14, 1947, filed her complaint for separate maintenance, alleging that she was married to defendant in Chicago on May 23, 1942; that a child was born on March 3, 1944, and that on March 14, 1947, plaintiff separated from the defendant and continued to live separate and apart from him without her fault; and charging defendant with cruelty and otherwise so conducting himself as to make her life miserable and unbearable, and repeatedly threatening her life.

Defendant on March 29, 1948, filed his cross-complaint for divorce, charging desertion on March 23, 1947, and continued without interruption for more than one year from said date.

A hearing was had upon the complaint and cross-complaint and answers thereto, resulting in a decree dismissing the complaint and cross-complaint for want of equity, from which plaintiff appeals.

The only ground urged for reversal is that the decree is against the manifest weight of the evidence. We cannot disturb the decree unless we are satisfied from a review of the record that it is manifestly against the weight of the evidence. *Berlingieri v. Berlingieri,* 372 Ill. 60; *Arliskas v. Arliskas,* 343 Ill. 112.

The wrongful course of conduct upon which the complaint for separate maintenance in this case is based consists of certain acts of cruelty and drunkenness. The specific acts of cruelty testified to were three: the first occurring in April of 1945, the second in December of 1945, and the last in November of 1946.

One of the acts of cruelty complained of is corroborated by one of plaintiff's sisters. The other acts of cruelty are uncorroborated by eyewitnesses although both of plaintiff's sisters testified to bruises observed on plaintiff, which the latter stated were made by defendant.

On the question of intoxication, the plaintiff states that defendant would come home four or five nights a week late for dinner "drunk or half drunk."

Defendant specifically and emphatically denies that he was ever guilty of any act of cruelty toward the plaintiff. He admitted that he drank and stated that he had come home "half drunk maybe 5 times in a year." He testified further that he was vice president of the National Bureau of Property Administration in charge of all salesmen and of the office and that he went to work every morning at nine o'clock and worked five or six days every week.

The testimony and the inferences to be drawn therefrom were on both the questions of cruelty and drunkenness sharply conflicting. We should not here presume to say that because a man came home "half drunk" five times a year his wife as a matter of law is entitled to separate maintenance. We think the question as to whether or not defendant's drinking habits were such as "renders her life miserable and living

with him as his wife unendurable'' (*Holmstedt v. Holmstedt,* 383 Ill. 290) was a question of fact for the trial court to decide.

■■ That there was bitter antagonism on the part of the in-laws toward the defendant is indicated from the record, it appearing even during the course of the trial; and the chancellor, who was entitled to take into consideration the conduct and demeanor of the witnesses while testifying, was in a better position to determine the credibility of the witnesses and to select the truth from the contradictory statements than is this court. In the case of *Lewis v. Lewis,* 316 Ill. 447, our Supreme Court, in sustaining a decree for divorce based on charges of extreme and repeated cruelty where the testimony was contradictory, said at page 449: ''The case was tried by the chancellor without a jury. The evidence in behalf of the appellee was sufficient, if believed, to justify the chancellor in granting the divorce.'' If the testimony of the defendant in this case is to be believed and the testimony of the plaintiff and her sisters to be disbelieved, then the chancellor was justified in refusing to grant the separate maintenance decree. The fact that the greater number of witnesses were on the side of the plaintiff does not necessarily imply a preponderance of the evidence on such side.

■■ The plaintiff by her bill for separate maintenance seeks to compel the defendant, for the remainder of his life, to be burdened with most of the responsibilities of marriage and to be deprived of all its privileges. To prevail, she must prove her case by a preponderance of the evidence. This, in the opinion of the chancellor, she did not do. In the case of *Arliskas v. Arliskas, supra,* which was a suit for separate maintenance and a cross-bill for a divorce, the court said at page 115: ''The law is well settled that where the evidence is conflicting the finding of the chancellor will not be disturbed unless it is clearly against the preponder-

ance of the evidence. The chancellor saw the witnesses and heard them testify and was in much better position to determine their credibility than we are. A court of review will not disturb the findings of fact of the chancellor under such circumstances unless it is apparent that error has been committed.''

On the question of condonation, the evidence indicated that the last act of cruelty complained of occurred on November 6, 1946, that the bill for separate maintenance was filed on March 14, 1947, and that the parties did not separate until March 23, 1947; so that for a period of four months after the last act of cruelty complained of the parties lived under the same roof and in the same bedroom as husband and wife. The testimony of plaintiff on this score is as follows:

''Q Well, Mrs. Rafferty, from the time that you testified to the last act of cruelty was supposed to have taken place in November of 1946—

A November 6th.

Q (Continuing) you and he continued to live as husband and wife?

A That's right.

Q And you slept in the same bedroom?

A In the same bedroom, that's right.

Q And you ate at the same table?

A Occasionally, yes.

. . .

Q You continued to live with him as his wife for practically 4 solid months after this act of cruelty?

A I had to as best I could.''

It is difficult to see how, in view of plaintiff's own admissions, the chancellor could have come to any

conclusion other than that the parties had lived together as man and wife after the last act of cruelty alleged and testified to. While there is other testimony offered by plaintiff and denied by defendant that she did not have marital relations with defendant during this period, in view of the contradictory nature of all the testimony, including plaintiff's, the court was justified in disbelieving her. Moreover, plaintiff, admitting that she slept in a separate room but in the same apartment after the last act of cruelty, and after suit filed, establishes that the parties were not living "separate and apart" within the meaning of the statute. *Smith v. Smith,* 156 Ill. App. 176; *Lowe v. Lowe,* 213 Ill. App. 607.

The decree of the superior court is affirmed.

*Affirmed.*

FEINBERG, P. J., and NIEMEYER, J., concur.