# Illinois Official Reports

## Appellate Court

---

**Beggs v. Board of Education of Murphysboro Community Unit School District No. 186**, 2015 IL App (5th) 150018

---

| | |
|---|---|
| Appellate Court Caption | LYNNE BEGGS, Plaintiff-Appellee, v. THE BOARD OF EDUCATION OF MURPHYSBORO COMMUNITY UNIT SCHOOL DISTRICT NO. 186, Defendant-Appellant (The Illinois State Board of Education and Jules Crystal, in His Official Capacity as Hearing Officer, Defendants). |
| District & No. | Fifth District<br>Docket Nos. 5-15-0018, 5-15-0070 cons. |
| Filed | December 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Jackson County, No. 13-MR-134; the Hon. W. Charles Grace, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Merry C. Rhoades, D. Shane Jones, and Kameron W. Murphy, all of Tueth, Keeney, Cooper, Mohan & Jackstadt, P.C., of Edwardsville, for appellant.<br><br>Ralph H. Loewenstein, of Loewenstein & Smith, P.C., of Springfield, for appellee. |
| Panel | JUSTICE WELCH delivered the judgment of the court, with opinion. Presiding Justice Schwarm and Justice Stewart concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, Lynne Beggs, a tenured teacher, was dismissed for cause from employment on April 30, 2012, following a resolution by the Board of Education of the Murphysboro Community Unit School District No. 186 (Board) pursuant to section 24-12 of the Illinois School Code (Code) (105 ILCS 5/24-12 (West 2012)). After the Board passed its resolution, the plaintiff requested a hearing before a hearing officer. The mutually selected hearing officer listened to four days of testimony and thereafter issued a "Findings of Fact, Analysis and Recommendation" (recommendation) on June 12, 2013, recommending that the Board's decision to dismiss the plaintiff be reversed. On July 30, 2013, the Board entered its decision to dismiss the plaintiff notwithstanding the hearing officer's recommendation, and on September 3, 2013, the plaintiff filed a complaint for administrative review in the circuit court of Jackson County pursuant to the Illinois Administrative Review Law (Act) (735 ILCS 5/3-101 *et seq.* (West 2012)).

¶ 2    The issue was appealed to the circuit court. On December 11, 2014, the circuit court issued a letter regarding its finding and decision, which concluded with an order reversing the Board's decision to dismiss the plaintiff from her employment and thereafter granted judgment in the plaintiff's favor. The Board filed a notice of appeal. On January 21, 2015, the circuit court entered another order, this one structured as such, again reversing the Board's decision and ordering the plaintiff's reinstatement and back pay of wages and benefits. The Board filed another notice of appeal, and this court subsequently consolidated the two appeals.

¶ 3    We will first address the facts relevant to the procedural issue on appeal, as it concerns the ability of this appellate court to hear the substantive issue before us. On October 8, 2013, the Board filed a motion to dismiss the plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2012)), on the basis that the plaintiff mailed the summons issued to the Board to an address other than the Board's address and directed the summons to an individual unaffiliated with the Board. The plaintiff's September 3, 2013, affidavit of last known addresses of the defendants, which was attached to the summons, properly identified "Murphysboro Community Unit School District 186" (District) as a defendant but failed to correctly name the president of the Board or its current address.[1] Nevertheless, the summons with the complaint attached was ultimately routed to and signed as received by a Board employee on September 4, 2013. In its motion, the Board asserted that the plaintiff's failure to serve the Board at its proper address and upon the designated president within 35 days following the Board's decision did not strictly comply with the procedural requirements of the Act; therefore, the complaint must be dismissed with prejudice.

¶ 4    On October 15, 2013, the plaintiff filed a motion for leave to file an amended affidavit of last known addresses and requested an alias summons. The alias summons was issued on October 21, 2013, 50 days after the complaint for administrative review was filed and 49 days after the Board received, despite the error, the original summons with the complaint attached. The Board again moved to dismiss on the same grounds, arguing that the alias summons did

---

[1] According to the plaintiff's response to the defendant's motion to dismiss, the affidavit "inadvertently listed Bob Chambers [the school education president] as President of the Board of Education for purposes of service and inadvertently listed the address of the Murphysboro Community Unit School District 186 as *** a previous address for the administrative offices of the school district."

not remediate her failure to comply. In a docket entry dated February 3, 2014, the trial court found that the Board's receipt of the original summons was within the requisite time period prescribed by the Act, and the plaintiff also had an alias summons issued with due diligence and served within 50 days. The court denied the Board's motion to dismiss.

¶ 5 The first issue presented for our consideration is whether the circuit court erred by denying the defendant's section 2-619 motion for involuntary dismissal of the plaintiff's complaint; we conduct a *de novo* review of the decision. *Mannheim School District No. 83 v. Teachers' Retirement System*, 2015 IL App (4th) 140531, ¶ 11.

¶ 6 As the Act grants special statutory jurisdiction to circuit courts to review decisions of administrative agencies when such decisions are properly appealed, the Act delimits the court's power to hear the case. *ESG Watts, Inc. v. Pollution Control Board*, 191 Ill. 2d 26, 30 (2000). Thus, a party seeking to invoke special statutory jurisdiction must strictly adhere to the prescribed procedures in the statute. 735 ILCS 5/3-102 (West 2012) ("Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision."); *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 179 (2007). One such requirement is that a party must file its complaint and issue summons "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2012). Thus, the Board asserts that the plaintiff's failure to strictly comply with this procedure means that her complaint must be dismissed with prejudice.

¶ 7 However, because the 35-day period for issuance of summons is mandatory, not jurisdictional, failure to strictly comply with the provision does not automatically deprive the court of jurisdiction in the instant case. *Burns v. Department of Employment Security*, 342 Ill. App. 3d 780, 786-87 (2003). Even if the plaintiff's mistakes in her affidavit resulted in a failure to properly issue summons, thereby failing to strictly comply with the Act's requirement, our courts have recognized a narrow exception to dismissal in cases where the plaintiff has made a good-faith effort to comply. *Id.* at 787. Good faith is not contingent upon a finding of error by the clerk of the court, but has been interpreted in this context as "an effort by the plaintiff to effect service and a failure to strictly comply with the service requirements because of some factor beyond the plaintiff's control." *Id.* at 791-92.

¶ 8 We find this case distinguishable from those cited by the defendant, as the plaintiff has not failed to name a necessary party in her complaint or summons (see *Mannheim*, 2015 IL App (4th) 140531, ¶ 7 (the plaintiff's complaint was properly dismissed where the plaintiff named the "Teachers' Retirement System, Illinois" as a defendant instead of the board of trustees of the administrative agency)); nor has the plaintiff mistakenly requested service upon an incorrect party (see *Gunther v. Illinois Civil Service Comm'n*, 344 Ill. App. 3d 912 (2003) (the plaintiff's complaint was properly dismissed where the plaintiff requested that the summons be issued to the Attorney General rather than the defendant Illinois Department of Transportation (IDOT), and therefore IDOT was never served)). The Act expressly prohibits the dismissal of this action based on the plaintiff's failure to provide the correct name of the Board's president. See 735 ILCS 5/3-107(a) (West 2012) (prohibiting dismissal for lack of jurisdiction based upon the failure to name a board member, acting in his official capacity, where the board has been named as a defendant as provided in the Act). Thus, in this regard, the plaintiff has strictly complied. The remaining issue, then, is whether the service upon the Board at its former

address constitutes proper service or at least a good-faith attempt at proper service under the Act.

¶ 9     We find that even if this mistake resulted in noncompliance with the strict measures of the Act (as we note that the relevant statutory requirement regarding an affidavit is to "designate the last known address of each defendant upon whom service shall be made" (735 ILCS 5/3-105 (West 2012)), which has been interpreted as permissible service procedure (see *Burns*, 342 Ill. App. 3d at 788)), we nevertheless find that the plaintiff clearly demonstrated a good-faith effort to comply. The plaintiff immediately moved to amend to have an alias summons issued after the Board filed its motion to dismiss, despite the fact that the Board actually received the original complaint and summons with little to no delay and had, in fact, already entered appearance in the action. While this fact does not excuse improper service, it is a factor that we may consider. *Id.* at 794-95.

¶ 10    Further, the Board has not shown that it suffered any prejudice as a result of improper service on it. Indeed, as the plaintiff points out, it is apparent by the fact that the Board filed its motion to dismiss prior to the service of the alias summons that it had notice that the complaint had been filed. Frankly, the plaintiff had no reason to discover and correct the defect within the 35-day period because the error had no immediate consequences. We emphasize that the purpose of this 35-day period is to hasten the procedure of administrative review and avoid undue delay, and we "should not find hypertechnical excuses to avoid deciding the merits of disputes, when no delay or harm was caused by the technical violation to any party." (Internal quotation marks omitted.) *Id.* at 787. We therefore decline to reverse the trial court's ruling on this issue.

¶ 11    The Board next asserts that even if this court has jurisdiction, the plaintiff failed to demonstrate any basis for overturning the decision to dismiss her. The Code grants the Board the power to dismiss tenured teachers for sufficient cause when, in the Board's opinion, the interests of the schools require it. 105 ILCS 5/24-16.5 (West 2012). However, the Code prescribes significant procedural requirements that govern the process of dismissal. 105 ILCS 5/24-12 (West 2012). Following the conclusion of such procedures, the Board's decision to dismiss a tenured teacher is subject to review under the Act. 105 ILCS 5/24-12(d)(9), 24-16 (West 2012). Thus, we turn to the overarching facts relevant to the remaining issue on appeal.

¶ 12    The plaintiff was a tenured teacher in the District, beginning employment as a full-time high school teacher during the 1993-94 school year. The plaintiff never received an unsatisfactory evaluation or one that rated her as needing improvement; however, after the death of her father in the summer of 2011, the plaintiff's mother's health began to deteriorate. As a result of assisting with her mother's care, the plaintiff was absent from school for a considerable number of days during the 2011-12 school term. The administration, including the principal, Mr. Turner, the assistant principal, Mr. Keener, and the superintendent, Mr. Grode, was aware of the plaintiff's mother's declining health. After exhausting her accumulated sick leave for this purpose, the record reflects that the District's administration became increasingly frustrated and concerned by the plaintiff's late arrivals and failure to be prepared for her first-hour geometry class. The administration held multiple meetings with the plaintiff regarding her behavior, issuing a "letter of concern" on January 30, 3012. After the plaintiff's late arrival on February 10, 2012, the plaintiff was sent home on a suspension with pay and the Board was asked to intervene. The Board thereafter suspended the plaintiff without pay for the time between February 10 and 21, 2012, and adopted a resolution authorizing a

notice of remedial warning pursuant to the Code on February 21, 2012, which was issued to the plaintiff the next day.

¶ 13    The notice explicitly directed the plaintiff to correct her conduct in the following ways: (1) to timely report to work by 8:15 a.m.; (2) to be prepared to, and begin to, teach her students at 8:30 a.m. (*i.e.*, to teach from "bell-to-bell," traditionally viewed as 8:15 a.m. to 3:30 p.m.); and (3) to have lesson plans available on the days she is absent so that the substitute teacher can provide the students' instruction.[2] The Board's notice stated that any further violation of its terms would lead to dismissal.

¶ 14    The plaintiff returned to work on February 22 and 23, 2012, with no performance issues, but almost immediately requested and received a leave of absence from her duties from February 27, 2012, through March 14, 2012, due to the continued failing health of her mother. The plaintiff was excused from her responsibility to prepare and submit lesson plans during this extended leave.

¶ 15    The plaintiff voluntarily resumed her position and was present at school on March 19 and 20, 2012 (March 15 and 16 being school holidays). However, due to her mother's deteriorating health, the plaintiff again took sick leave on March 21, 22, 23, and 26, 2012. She returned to work on March 27, 2012, but was immediately suspended from her teaching position; on April 23, 2012, she was advised that the administration intended to recommend to the Board that she be terminated.

¶ 16    On April 30, 2012, following another hearing, the Board adopted a resolution to dismiss and to authorize the notice of dismissal pursuant to the Code, terminating the plaintiff and suspending her without pay pending a final disposition of the dismissal proceedings. The plaintiff's mother died shortly after the dismissal.

¶ 17    The plaintiff timely requested a hearing before an impartial hearing officer. The parties mutually selected Jules I. Crystal to conduct the hearing, which was held on January 14, 15, 28, and 29, 2013. At the hearing, the plaintiff indicated that she understood the directives and expectations that were set forth in the notice. After receiving posthearing briefs and reply briefs, pursuant to the requirements of section 24-12 of the Code, Crystal issued a recommendation including findings of fact and a recommendation concerning whether the Board established, by a preponderance of the evidence, that the plaintiff violated the Board's February 21, 2012, notice of remedial warning, that her conduct was irremediable, and whether the proposed dismissal should be sustained. 105 ILCS 5/24-12(d)(8) (West 2012); 23 Ill. Adm. Code 51.70(b) (2012). Despite Crystal's recommendation to reinstate the plaintiff, the Board found that dismissal was warranted; as such, it gave its reasoning and conclusion in its written order and incorporated Crystal's findings of fact but modified and supplemented those that, "in its opinion, *** [were] against the manifest weight of the evidence." 105 ILCS 5/24-12(d)(8) (West 2012).

¶ 18    On appeal to the circuit court, the court found it must apply the following standard of review: (1) with regard to factual determinations, whether the hearing officer's factual determinations are against the manifest weight of the evidence, a standard that restricts the Board's reversal of the hearing officer's findings unless all reasonable and unbiased persons clearly agree that the hearing officer erred and should have reached the opposite conclusion;

---

[2]The Board's notice actually identified seven performance deficiencies for the plaintiff to remedy, but only three are at issue here.

(2) with regard to determining whether cause for dismissal exists, the agency's findings of cause to discharge are not *prima facie* true and correct and will be reversed where they are arbitrary, unreasonable, or unrelated to the requirements of service; and (3) the determination of whether conduct is remediable or irremediable is a mixed question of law and fact and is reviewed by the court using a clearly erroneous standard. Bearing in mind that it is to consider both the Board's decision and supplemental findings and the hearing officer's recommendation (105 ILCS 5/24-12(d)(9) (West 2012)), the court concluded that on review, deference is to be given to the hearing officer because of his mandated experience, impartiality, and the fact that the hearing officer is the only one bound to hear evidence and evaluate the credibility of witnesses (105 ILCS 5/24-12(d)(3) (West 2012)). Based on the evidence presented, the circuit court found that dismissal was not warranted and reversed the decision of the Board, ordering the plaintiff's reinstatement to a full-time teaching position with back wages and benefits.

¶ 19    The plaintiff first claims that because she was present at school for only four days after receiving the notice of remedial warning, the Board failed to give her a reasonable time to remediate her alleged deficiencies. However, we need not address the plaintiff's argument regarding a "reasonable time" for a remediation period, because we find that the Board did not have sufficient evidence to dismiss the plaintiff in light of the deference afforded to Crystal's findings of fact and recommendation. We are guided to this decision on review by the statutory language providing that we "shall give consideration to the school board's decision and its supplemental findings of fact, if applicable, and the hearing officer's findings of fact and recommendation" in making our decision. 105 ILCS 5/24-12(d)(9) (West 2012). As such, we begin by summarizing their written directives in turn.

¶ 20    Crystal made the following findings of fact regarding the events following the execution of the notice of remedial warning. On March 19, the plaintiff returned to her teaching duties, and present in the classroom was Carolina Badiano, a teacher's aide helping translate for a Spanish-speaking student. Badiano testified that for approximately 15 to 20 minutes beyond 8:30 a.m., students were sleeping or on their cell phones before the plaintiff began teaching. Badiano reported her concern regarding this occurrence to the administration.

¶ 21    On March 20, the plaintiff contacted Grode to let him know that she would not arrive at school by 8:15 a.m. After a telephone conversation, Grode agreed that this would not result in any negative consequences. Crystal noted that "while the record is not entirely clear, it appears that the plaintiff did show up for class by 8:30 a.m."

¶ 22    Due to her mother's health, the plaintiff was again absent on March 21 and 22. The plaintiff emailed her lesson plans to fellow teacher Linda Homan, though the plans did not reach the plaintiff's classroom until after the class began at 8:30 a.m. As a result of an investigation into the plaintiff's actions, Grode found that Joseph Sendek, the substitute teacher on March 21 and 22, had no lesson plans on which to rely when he began his instruction, requiring that he consult with another teacher regarding what to teach the first-period geometry students.

¶ 23    On March 27, Grode held a meeting with the plaintiff, inquiring about her recent performance issues. Under Grode's questioning, the plaintiff told Grode that she believed that she logged in to the school's electronic program, Teacher Logic, around 8:20 a.m. on March 19. The plaintiff disagreed with Badiano's description of the class decorum that day. The plaintiff acknowledged that she reported to work after 8:15 a.m. on March 20, but contended

that her lesson plans were sent prior to 8:20 a.m. on March 21 and 22. This meeting ended with Grode placing the plaintiff on paid suspension.

¶ 24   In his recommendation, Crystal noted that while the record contains testimony that teachers are expected to be at school bell-to-bell, there appears to be an acceptance of teachers arriving at work after 8:15 a.m., as long as they are ready to begin instruction by 8:30 a.m.; further, because there is no formal sign-in or time clock system, determining a teacher's arrival time with certainty is not always possible. Nevertheless, Crystal noted, the relevant inquiry is whether the plaintiff conformed her conduct to the expectations of the administration as set forth in the notice.

¶ 25   As to the events of March 19, Crystal found that the plaintiff credibly testified as to how the first five to eight minutes of class were used (that being school announcements, the Pledge of Allegiance, and addressing student complaints that they did not understand the material that the substitute teacher had covered), and that, due to Badiano's teaching inexperience generally and math inexperience specifically, her description of her observations "should have given the District pause before it placed such strong reliance on her assessment of what did or did not take place in the classroom." Crystal found that the events of March 19 were not a failure by the plaintiff "to use classroom and instructional time appropriately and effectively."

¶ 26   In regards to the events of March 20, the plaintiff contacted Grode to let him know that she would be unable to arrive at school by 8:15 a.m. Crystal found that while the plaintiff did not arrive by that time, she arranged to email her lesson plans to Homan. Crystal noted that though this falls short of the expectations memorialized in the notice, the record reflected that this was the first occurrence of its kind since the plaintiff had received it, and that Homan received the lesson plans by 8:30 a.m. Crystal's footnote indicates that "the District has no basis to contradict the plaintiff's assertion that not only did her lesson plans arrive by 8:30 a.m. on this day, but she arrived by this time as well."[3]

¶ 27   As to the events of March 21 and 22, Crystal found that after learning of the gravity of her mother's current condition on the evening of the twentieth, the plaintiff contacted the school to relate her mother's situation and to say that she would likely not be coming to work for the remainder of the week; the plaintiff also contacted Homan to let her know that she would be emailing her the substitute lesson plans. Crystal noted that Homan confirmed that the lesson plans were received within minutes of 8:30 a.m. on March 21. Crystal found that while Sendek was a credible witness, he did not believe that Sendek's assessment of the March 21 events was reliable, as Sendek acknowledged that he could not remember whether lesson plans were available on March 21 or when they arrived in the classroom. Crystal conceded that on these days, the plaintiff failed to fulfill her lesson plan responsibility to the extent that the District has a right to require; however, he noted, because the lesson plans did in fact arrive, the students were impacted minimally, if at all, and very serious parental health matters played a role in the plaintiff's actions on these days, Crystal did not find the plaintiff's conduct "to have been the type of serious breach of [the notice] such that it supported, or could form the basis of, the decision to terminate her."

---

[3]We note that at some point, the hearing officer incorrectly recited that the plaintiff was absent on March 20 and 21 instead of March 21 and 22; we have corrected the mistakes for clarity and disagree with the contention that any clerical errors affected the quality of Crystal's report.

¶ 28    Crystal found that of the eight school days following the notice, the plaintiff was actually at school for, at most, four days: February 22 and 23 and March 19 and 20. During this short remediation period, the plaintiff had no unexcused late arrivals and fulfilled her obligations regarding substitute lesson plans. Crystal noted that while the directives were reasonable, he did not find that the perceived violations were either willful or intentional on the plaintiff's part. Crystal emphasized that the plaintiff was not provided "a reasonable opportunity to correct the job performance deficiencies" and that "the fact that the District permitted [the plaintiff] to continue as a teacher, yet perform her duties in what it viewed as an unacceptable manner, for months before issuing its Notice does not privilege the District to compress the time period for potential remediation." Crystal noted that the plaintiff's work history "point[s] to the very real possibility that the performance issues displayed by [the plaintiff] during this period represent an anomaly in her teaching career," and at a minimum, the plaintiff "should have at least been given an opportunity to prove whether or not this is the case." In a footnote, Crystal suggested that effecting a "last-chance understanding" until the end of the school year may have served all of the parties' goals and objectives. Crystal found that the Board failed to prove that dismissal was warranted and recommended that the plaintiff be reinstated to her teaching position.

¶ 29    In response, the Board's written order began by recognizing that it must adopt Crystal's factual findings unless they are against the manifest weight of the evidence, but remained free to accept or reject his recommendation. The Board also noted that it "faced a significant challenge" in identifying Crystal's specific findings of fact, which it felt were commingled with his analysis, opinion, and ultimate recommendation. However, the Board found the following facts relevant to its decision.

¶ 30    In regards to the events of March 20, the Board supplemented facts regarding the plaintiff's morning phone call to Grode, noting that he testified that when the plaintiff called to say that she would be late, she did not want Grode to "hold it against [her]." Grode explained that he excused her tardiness because there was no substitute teacher in place and he was aware that the plaintiff's first-period class was already behind in their coursework. The Board also supplemented the plaintiff's testimony, noting that she requested a reprieve that day because although she had been told to call in sick on any day that she thought she would be in after 8:15 a.m., she testified: "I don't want to do [those] kind of things to the District. I wanted to be there and I wanted to be there for my students."

¶ 31    The Board discredited Homan's testimony, noting it was "ambiguous and uncertain" regarding the manner and timeliness of the substitute's procurement of the plaintiff's lesson plans. The Board also supplemented the facts with testimony from Matt Morefield, a student in the plaintiff's first-period class. Regarding the alleged late arrival of the plaintiff's lesson plans, Morefield stated that it was obvious when no lesson plan was available because the substitute teacher would leave the classroom to consult with the other teachers, and "some days [the substitute teacher] would come back with one [and] some days he wouldn't. And it was kind of obvious where he was getting them from."[4]

_____

        [4]This court notes that on review of the record, Morefield testified that he recalled the lesson plan issues occurring in late January or early March; he specifically testified that there were no problems with getting the lesson plans on March 21 and 22, as he was the student who delivered the plans from Homan to Sendek no later than 8:33 a.m.

¶ 32    The Board supplemented Crystal's facts with testimony from then-Board president Mike Austin, who testified at the hearing that the plaintiff dismissed the remedial warning and wanted to "play by her own rules" to the detriment of the students. Then-Board vice president Mike Cripps testified that the plaintiff was dismissed because she did not comply with the directives of the remedial letter; that is, at dismissal, the issues of timely reporting to work, inadequate or nonexistent lesson plans, and insubordination for failure to comply with these requests remained.

¶ 33    In the Board's "Decision and Conclusion," it found that the plaintiff's conduct did not follow the Board's directives, and this provided sufficient cause for her dismissal. Specifically, the Board found that she violated her notice of remedial warning by (1) failing to timely report to work by 8:15 a.m., citing Crystal's finding that the plaintiff did not arrive at school by 8:15 a.m. on March 20, 2012, and that such an action fell short of the expectations memorialized in the notice; (2) failing to have lesson plans available to the substitute teachers, citing Crystal's finding that the plaintiff failed to fulfill this responsibility to the extent the District had a right to require; and (3) failing to teach from "bell to bell" on March 19, rejecting Crystal's conclusion on this issue as against the manifest weight of the evidence and giving credit to the sworn testimony of Badiano insofar as the plaintiff was not prepared to and did not begin teaching at 8:30 a.m. that morning.

¶ 34    The Board concluded that the plaintiff's misconduct was detrimental to the District and to the best interests of the students, which provided sufficient cause for her dismissal. Specifically, the Board found that the plaintiff's late call-in on March 20 was detrimental as she placed her own needs ahead of her classroom by placing Grode in the position of either excusing the late arrival or having no teacher for the plaintiff's first-period class that day. The Board also found that the plaintiff's failure to have lesson plans available for March 21 and 22 was detrimental, as the late arrival of lesson plans, even if only shortly after 8:30 a.m., means a loss of instruction time. Finally, the Board found that the plaintiff's failure to teach "bell to bell" on March 19 was a detrimental loss of instruction time of particular importance, as the first-hour class was one chapter behind the plaintiff's sixth-hour geometry class and two chapters behind a fellow teacher's comparable geometry class. The Board refused to dismiss Badiano's observations, as "any competent adult, whether trained or not, can determine whether students are engaged in class." The Board also considered evidence in the record that corroborated Badiano's statements, such as Grode's notes on his interviews with students in the plaintiff's first-hour class, 12 out of 17 of which reported a late start of instruction.[5]

¶ 35    The Board concluded that the plaintiff's last-minute call to Grode and her failure to have lesson plans available for the substitute was insubordination warranting dismissal, and that her ongoing behavior showed that she did not and would not correct her behavior. The Board, agreeing with Crystal that the plaintiff understood the directives of the notice, noted that the plaintiff voluntarily chose to return to work that week, an indication that she was ready to perform her duties and comply with the District's expectations. Contrary to Crystal's suggestion that the plaintiff should have been provided a reasonable time to remediate with a "last-chance understanding," the Board emphasized that the plaintiff was, in fact, given an opportunity to correct her behavior. She was aware that her misconduct needed to be corrected

---

[5]This exhibit was admitted at the hearing with the understanding that Crystal recognized the hearsay problems and intended to give it the appropriate weight.

"immediately upon receipt [of the notice]," yet she proceeded to violate the directives each day following her return to work. The Board noted that it did exactly what Crystal suggested it should have done, *i.e.*, accommodated her during her leave of absence and issued directives and expectations that she was expected to fully comply with upon her return. The Board stated that it did not take its actions lightly, and "accordingly, we reject Mr. Crystal's recommendation that we essentially ignore the action we took in February 2012." The Board concluded that the best interests of the schools required that the plaintiff no longer serve as a teacher in the District and ordered the plaintiff's dismissal.

¶ 36    The standard of review in cases involving administrative review depends upon whether the issue is one of fact or law. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009). Factual questions are reviewed under the manifest-weight-of-the-evidence standard, questions of law are reviewed *de novo*, and mixed questions of law and fact are reviewed for clear error. *Id.* at 272-73. Under the Act, we review the final decision of the administrative agency (*Vincent v. Department of Human Services*, 392 Ill. App. 3d 88, 93 (2009)); here, the Code as amended in 2011 provides that the decision on review is that of the Board. 105 ILCS 5/24-16 (West 2012) ("The provisions of the Administrative Review Law [(735 ILCS 5/3-101 *et seq.* (West 2012))] *** shall apply to and govern all proceedings instituted for the judicial review of final administrative decisions *** of a school board for dismissal for cause under Section 24-12 of this Article.").

¶ 37    Generally, in employee discharge cases, the scope of review of an agency's decision regarding discharge is a two-step process: first, determining whether the findings of fact are against the manifest weight of the evidence and second, a determination of whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 718 (2009). Under the Act, reviewing courts are prohibited from reweighing the evidence or making an independent determination of the facts. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). While an agency's determination of cause to discharge is not considered *prima facie* true and correct, a reviewing court reverses an agency's finding only where it is arbitrary, unreasonable, or unrelated to the requirements of service; that is, where all reasonable and unbiased persons would agree that the finding is erroneous and that the opposite conclusion is clearly evident. *Porter*, 396 Ill. App. 3d at 726.

¶ 38    The parties agree, however, that due to the unique procedures set forth in the Code regarding downstate teacher dismissals after 2011, we are presented with an issue of first impression in applying the standard of review. The Board urges us to accord the Board's findings of fact and decision deference pursuant to the above rules of law, as it is now the final decision maker under the statutory framework as amended.[6] The plaintiff argues that while the Board, as the employer, has been granted the final decision-making authority under the

<hr/>

[6]Under the former section 24-12 of the Code, the board's initial decision to dismiss a tenured teacher was reviewed by an independent hearing officer, whose subsequent decision was final for the purposes of administrative review. See Pub. Act 97-8, § 5 (eff. June 13, 2011). However, pursuant to legislation enacting educational reform in 2011 ("Senate Bill 7"), the Illinois General Assembly amended the Code's procedures for downstate teacher dismissals, providing that, similar to the procedure already in place in the Chicago public schools (see 105 ILCS 5/34-85 (West 2012)), the hearing officer provided a report and recommendation, but final decision-making authority was held by the local boards of education. See Pub. Act 97-8, § 5 (eff. June 13, 2011).

changes to the Code, the legislative changes also indicate that the hearing officer's fact finding plays a pivotal role in our review.

¶ 39    As amended, the downstate tenured teacher dismissal procedure now resembles the procedure in place in the Chicago area public schools, which indeed gives deference to the final decision-making authority of the school board. See 105 ILCS 5/34-85 (West 2012); *Raitzik v. Board of Education of the City of Chicago*, 356 Ill. App. 3d 813, 823 (2005) (wherein a reviewing court examines only the final decision of the board and takes a two-step approach: first, determining whether the board's findings of fact, which are deemed *prima facie* true and correct, and decision were against the manifest weight of the evidence and second, determining whether those findings sufficiently support the board's conclusion that cause for dismissal existed).

¶ 40    Though the reforms produced through Public Act 97-8 amended the statutes governing both the upstate and downstate procedures, the upstate procedures (pursuant to 105 ILCS 5/34-85 (West 2012)) remained the same in regards to the weight afforded to the board's decision. In contrast, the amendments to section 24-12 of the Code, while removing the final decision-making authority from the hearing officer, thereafter included procedural hurdles for a board to reach an opposing conclusion, *i.e.*, requiring the incorporation of the hearing officer's factual findings and prohibiting a board from departing from those findings unless it determines the findings to be against the manifest weight of the evidence. Also notable is a provision adding to the hearing officer's qualification requirements; not only must a hearing officer in a downstate teacher dismissal case be, as before, accredited by a national labor organization with a minimum five years' experience, but beginning September 1, 2012, he or she must also have participated in board-approved training for teacher dismissal hearing officers "so that he or she is familiar with issues generally involved in evaluative and non-evaluative dismissals." 105 ILCS 5/24-12(d)(3) (West 2012).

¶ 41    Thus, it is clear that in First District cases such as *Raitzik*, a reviewing court's strong deference to a school board's findings of facts and decision is entirely appropriate. However, due to the section 24-12 provisions unique to downstate dismissals, it is decidedly unclear what weight the legislature intended a reviewing court to give a downstate hearing officer's recommendation by stating only that, when the recommendation and the board's order differ, the reviewing court "give consideration to the school board's decision and its supplemental findings of fact, if applicable, and the hearing officer's findings of fact and recommendation" in its decision. 105 ILCS 5/24-12(d)(9) (West 2012).

¶ 42    When construing a statute, the primary objective is to ascertain and give effect to the legislature's intent in enacting the statute. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). The language is to be given its plain and ordinary meaning, and the statute must be read as a whole. *Id.* at 111. Upon a plain reading of section 24-12, there is no question that the board *may* depart from the hearing officer's recommendation; however, it seems apparent from the reading of the statute as a whole that the legislature desired such a departure to be an unusual occurrence that would produce careful scrutiny if brought before a reviewing court.[7]

---

[7]The language of section 24-12(d)(8) of the Code (105 ILCS 5/24-12(d)(8) (West 2012)) did not escape our notice. "Manifest weight of the evidence" is judicial language with a clear meaning to those

¶ 43    We think that a fair interpretation of the amendments, in light of the differences from the upstate procedures, is that the legislature intended a certain level of deference, traditionally given to the fact finder, to remain with the hearing officer. We feel this interpretation is supported on two grounds: first, it better reflects our legal tradition of giving deference to the impartial entity charged with hearing evidence and evaluating witness credibility, as the entity (in this case, the hearing officer) is in a better position than a reviewing court to "select the truth." *Rafferty v. Rafferty*, 337 Ill. App. 277, 280 (1949). Here, the hearing officer must not be a resident of the school district, must be disinterested and impartial, and must have no personal or financial interest in the results of the hearing (23 Ill. Adm. Code 51.40(a) (2012)). This is a particularly notable requirement when the Board, as an entity, operates very nearly as the exact opposite. Additionally, we feel that this construction gives teeth to the extensive procedural hurdles that we discussed above, the legislative inclusion of which belies the Board's assertion that the hearing officer remains a part of the process solely to preside over the hearing and develop the record. Frankly, the Board is inherently an interested party, and therefore we think that this reading of the statute balances the tremendous shift of power created by the primary reform−providing final decision-making authority to the Board as opposed to the hearing officer−that the legislature felt was more appropriate in an employer-employee termination context (see 97th Ill. Gen. Assem., Senate Proceedings, Apr. 14, 2011, at 294-95 (statements of Senator Lightford) ("The board is the employer and they should have that right [to make the final decision regarding termination].")).[8]

¶ 44    Thus, in regards to the standard of review, we find that our focus is narrower than it may appear at first blush. Ultimately, we are asked to consider the Board's findings that are contrary to Crystal's−with an eye to the fact that Crystal was the mutually selected, experienced, and unbiased determiner of witness credibility−and determine whether the steps taken by the Board in dismissal are supported by the evidence at the hearing. This approach restricts the Board from benefiting from the traditionally deferential standard of review for its own findings of fact, and instead honors the legislative intent of section 24-12(d)(8)'s requirement that the Board *shall* incorporate the hearing officer's findings, and may modify or supplement the findings of fact if it believes that those findings are against the manifest weight of the evidence, *i.e.*, all reasonable and unbiased persons clearly agree that the hearing officer erred, and that the evidence presented at the hearing begs the opposite conclusion. The standard of review otherwise remains consistent with the canon of administrative law in Illinois; that is, with regard to determining whether cause for dismissal exists, the Board's findings of cause to discharge will be reversed only where they are arbitrary, unreasonable, or unrelated to the requirements of service. See *Porter*, 396 Ill App. 3d at 726. Bearing this in mind, we return to the four days at issue−March 19, 20, 21, and 22, 2012−and the three purported violations that the Board determined were cause for dismissal.

¶ 45    First, the Board determined that the plaintiff failed to teach "bell-to-bell" on March 19, 2012, and therefore dismissal was warranted where she failed to remediate her allegedly

---

in legal appellate work, and it draws attention to the deference entitled to the hearing officer upon the board's review.

[8]Our courts confirm that the administrative agency is in the best position to assess how an employee's conduct affects its operations. See *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 529 (1997).

improper use of class time. This was a rejection of Crystal's findings based on the testimony, as he found that Badiano's lack of qualification and experience, such as having no certification for teaching high school and having never taught math, meant that she was not qualified to assess what did or did not happen academically at that time. He instead credited the plaintiff's explanation of the morning's events. The Board, however, rejected Crystal's credibility determinations and attempted to bolster the departure with additional evidence. However, this evidence−Grode's interviews with unidentified students from that geometry class−provided little support for the Board's reasoning, as it was introduced into evidence despite obvious hearsay issues and Crystal's statement that he would give it little weight. Based on the foregoing, we conclude that Crystal's factual findings were not unreasonable based on the evidence presented, and as such, the Board's decision to reject his determination was not sufficiently supported by the Board's amended and supplemental facts.

¶ 46     Next, the Board determined that on March 20, the plaintiff violated the notice to remedy when she arrived after 8:15 a.m. but before 8:30 a.m. Crystal specifically found that in a telephone call that morning, Grode agreed to excuse the late arrival of the plaintiff. It appears uncontested that Grode did in fact tell the plaintiff that there would not be any consequences for her late arrival, but the Board disagreed with Crystal's recommendation as to dismissal because the plaintiff's placing of her personal needs before those of the students was detrimental to the district. However, with no evidence supporting either an unexcused tardiness or the detrimental effect of the plaintiff's late arrival, Crystal's factual findings were not unreasonable, and as such, the Board's decision to reject his determination was insufficiently supported by the evidence.

¶ 47     Finally, the Board determined that on March 21 and 22, the plaintiff violated the notice of remedial warning when she did not have lesson plans available for a substitute to provide instruction in her absence. Citing Homan's testimony, Crystal found that the plans arrived no more than three minutes late on these mornings and the tardiness did not interfere with the students' learning. The Board, in coming to a contrary conclusion, found that the lesson plans did not arrive until the middle of the first hour on March 21 and did not arrive until the start of the second hour on March 22. The Board cited an exhibit containing Grode's notations from a meeting with Sendek and additionally referred to the testimony of student Morefield. However, as previously noted, Sendek himself did not provide the relevant testimony, and Morefield's testimony references a time period prior to the issuance of the notice; indeed, Morefield goes on to confirm that on the mornings in question, the lesson plans arrived no later than 8:33 a.m. to the substitute teacher, as he delivered them himself. Crystal heard the relevant testimony and made credibility determinations and based on our review of the record, his factual findings were not unreasonable. Again, the Board's decision to reject Crystal's determination was not sufficiently supported by the Board's amended and supplemental facts.

¶ 48     Crystal found that the Board did not prove, by a preponderance of the evidence, that dismissal was warranted. As explained above, we agree that the Board's contrary findings were not supported by the evidence at the hearing and therefore hold that none of the stated violations found by the Board can pass muster under the required standard for a teacher dismissal case; that is, the above referred-to findings used to dismiss the plaintiff from her position were arbitrary, unreasonable, and unrelated to service, because no logical nexus exists between the plaintiff's fitness to perform as a teacher and the misconduct in question which led to her dismissal. *Raitzik*, 356 Ill. App. 3d at 831.

¶ 49        While we root our holding today in the three relevant events following the plaintiff's notice of remedial warning and the actions stemming therefrom, we note as an aside that an employee's prior work record and an authority's selective or differing enforcement of policy may be considered in determining whether conduct constitutes cause for dismissal. *Department of Revenue v. Smith*, 150 Ill. App. 3d 1039, 1051 (1986). After years of dependable service, the plaintiff's work product suffered during one of the most emotionally difficult periods of her life, and, perhaps unwisely, she returned to work before the personal crisis ended with her mother's death. As both the hearing officer and the trial court noted, no one's work is tested in a vacuum, and the school districts and their employees may be better served by working together to provide that a remediation period begins *after* such critical events have concluded. The trial court's decision and order reversing the Board's decision to dismiss the plaintiff is affirmed.

¶ 50        Affirmed.